CIRILLO by Guardian *ad litem,* and another, Appellants, v. CITY OF MILWAUKEE and others, Respondents.

*April 11—May 9, 1967.*

---

706

708

For the appellants there was a brief by *Atinsky, Kahn & Sicula* of Milwaukee, and oral argument by *Philip L. Atinsky* and *Paul E. Sicula.*

For the respondents there was a brief by *Grootemaat, Cook & Franke,* attorneys, and *Harry F. Franke* and

*David J. Hase* of counsel, all of Milwaukee, and oral argument by *Mr. Hase.*

WILKIE, J.   Three issues are raised on this appeal:

(1) Was the trial court correct in finding as a matter of law that defendant Paul Sherry breached no duty to Donald Cirillo?

(2) Was the trial court correct in holding, even if there was a jury question of Paul Sherry's negligence, the negligence of Donald Cirillo was, as a matter of law, at least 50 percent of the total negligence?

(3) Was the trial court correct in concluding that as a matter of law liability should not be imposed upon the defendants under these circumstances because such liability would impose an undue burden on the operation of the school system and taxpayers by making them the absolute insurers of students' safety?

This court's rules for the application of summary judgment are explained in *McWhorter v. Employers Mut. Casualty Co.*[1] and quoted with approval in *Leszczynski v. Surges*[2] and *Skyline Construction, Inc., v. Sentry Realty, Inc.*[3] Under this court's procedure for reviewing a decision granting summary judgment we first examine the moving party's (a defendant) affidavit to determine whether it establishes, *prima facie*, a defense. In the summary-judgment statute, sec. 270.635 (2), it is said the affidavit, if made on behalf of the defense, must state evidentiary facts ". . . as shall show that his denials or defenses are sufficient to defeat the plaintiff . . . ." If such a defense is established, the affidavit of the plaintiff is examined to determine whether issues of fact are shown ". . . which the court shall deem sufficient to entitle him to a trial."[4] Summary judgment is a drastic remedy and should be used only when there is no sub-

---

[1] (1965), 28 Wis. (2d) 275, 277, 137 N. W. (2d) 49.
[2] (1966), 30 Wis. (2d) 534, 538, 141 N. W. (2d) 261.
[3] (1966), 31 Wis. (2d) 1, 4, 141 N. W. (2d) 909.
[4] Sec. 270.635 (2), Stats.

stantial issue of fact, or inferences to be drawn from the facts.[5]

Applying these rules to the facts of the instant case, it is first necessary to examine the affidavit filed in support of the defendants' motion for summary judgment. This affidavit made by the attorney for defendants, merely quoted those portions of the complaint and of adverse examinations of Donald Cirillo and Roger Kenny relating to Cirillo's conduct leading up to the accident, and Attorney Hase's statement that he believed the plaintiffs' action to be without merit.

In *Grosso v. Wittemann*[6] this court recognized that ". . . [a] teacher in the public schools is liable for injury to the pupils in his charge caused by his negligence or failure to use reasonable care." The question presented on this appeal is whether Paul Sherry's conduct on January 20, 1965, as a matter of law, was reasonable. The trial court came to this conclusion based upon its determination that Sherry ". . . could not have foreseen any risk or harm to Plaintiff Donald Cirillo, or any other student in his class, as a probable consequence of his conduct."

This court has often stated that "harm must be reasonably foreseen as probable by a person of ordinary prudence under the circumstances, if conduct resulting in such harm is to constitute negligence."[7] There is no necessity, however, that the actual harm that resulted from the conduct be foreseen. In *Schilling v. Stockel*[8] this court, quoting with approval from *Christianson v. Chicago, St. P., M. & O. R. Co.*,[9] said:

---

[5] *Voysey v. Labisky* (1960), 10 Wis. (2d) 274, 278, 103 N. W. (2d) 9; *Skyline Construction, Inc., v. Sentry Realty, Inc., supra,* footnote 3, at page 4.

[6] (1954), 266 Wis. 17, 20, 62 N. W. (2d) 386.

[7] *Meihost v. Meihost* (1966), 29 Wis. (2d) 537, 545, 139 N. W. (2d) 116; *Szep v. Robinson* (1963), 20 Wis. (2d) 284, 291, 121 N. W. (2d) 753; *Wisconsin Power & Light Co. v. Columbia County* (1962), 18 Wis. (2d) 39, 43, 117 N. W. (2d) 597.

[8] (1965), 26 Wis. (2d) 525, 532, 133 N. W. (2d) 335.

[9] (1896), 67 Minn. 94, 97, 69 N. W. 640.

"... the law is that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was liable to result in injury to others, then he is liable for any injury proximately resulting from it, although he could not have anticipated the particular injury which did happen. Consequences which follow in unbroken sequence, without an intervening efficient cause, from the original negligent act, are natural and proximate; and for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow."

The controlling factor to the trial court was the nature of the conduct in which Cirillo was engaged when he was injured—the fact that Cirillo was participating in rowdyism. The trial court stated it would have been a different situation

"... had the plaintiff minor been sitting at a table or desk in the classroom and had been minding his own business and thereafter sustained an injury as a result of a commotion instituted by other classmates during the period when the teacher had left the room. This, I am of the opinion, would then have created a substantial issue of fact for the Court or jury to determine, whether or not the teacher under these circumstances should have assumed or presumed that some injury might occur to one of the students in the unsupervised classroom."

From this language one may conclude that if, rather than Cirillo, the plaintiff in the instant case had been an innocent bystander who was minding his own business when Cirillo or one of the other participants in the keep-away game crashed into him, then the trial court would have permitted the question of Sherry's negligence to go to the jury. Under the theory of the *Schilling Case*, however, if Sherry could foresee harm to some students in the class arising from rowdyism as a result of his absence, it is immaterial that the harm actually resulting was not that foreseen by Sherry.

The principal difficulty in this case is, therefore, the nature of the activity in which Donald Cirillo and his friends engaged after Sherry left the room. Defendants cite *Ohman v. Board of Education of City of New York* [10] and *Guyten v. Rhodes* [11] for the proposition that even if the absence of a teacher from the classroom is negligence, he should be relieved of liability if the cause of the injury is the intervening conduct of another student. In *Ohman* the plaintiff student was struck in the eye by a pencil thrown by a fellow student while the teacher was absent from the room putting supplies away in a closet down the hall. The New York court held this was an unforeseen act of a third party which could as well have happened if the teacher had been present. In *Guyten* the plaintiff was in a class for defectives and incorrigibles and was struck in the eye by a milk bottle thrown by another student while the teacher was gossiping in another room. The Ohio court held the proximate cause of the injury was the sudden unwarranted assault, and there was nothing to show the same thing would not have happened if the teacher had been present.

In the instant case it cannot be held as a matter of law that the rowdyism of the participants in the keep-away game was a superseding cause of Cirillo's injury. If, under all the circumstances, Paul Sherry's absence from the classroom is negligence, the fact that Donald's conduct or that of the other participants in the game was also a substantial factor does not excuse Sherry. [12]

In the instant case a jury could find that Sherry acted unreasonably in leaving his class unsupervised for a period of twenty-five minutes. That a group of almost 50

[10] (1949), 300 N. Y. 306, 90 N. E. (2d) 474.

[11] (1940), 65 Ohio App. 163, 29 N. E. (2d) 444.

[12] Restatement, 2 Torts, pp. 1184, 1185, sec. 440, quoted with approval in *Merlino v. Mutual Service Casualty Ins. Co.* (1964), 23 Wis. (2d) 571, 579, 127 N. W. (2d) 741.

adolescents left unsupervised in a gymnasium for this period of time contains within it at least the seeds of unruliness is perhaps not a proper object of judicial notice. However, the least that can be said is "Boys will be boys." [13] In the dissenting opinion in *Ohman v. Board of Education of City of New York,* Judge CONWAY observes:

"An ordinary layman, without any special knowledge or training, must, in some instances, anticipate subsequent conduct of children by which they may harm themselves. Whether such subsequent conduct could have been foreseen by the exercise of reasonable care and prudence under the circumstances has been held a question of fact for the jury. . . . How much more should school teachers and principals be required to exercise reasonable care and prudence, under the circumstances, to anticipate and guard against dangerous conduct on the part of their youthful pupils affecting one another." [14]

It is not unreasonable to consider there may be circumstances in which a teacher could anticipate even the type of conduct in which Donald Cirillo was engaged in this case. Furthermore, it is not unreasonable to consider the very presence of the teacher in the classroom might have discouraged the throwing of the milk bottle in *Guyten, supra,* or the pencil in *Ohman, supra,* or the pushing and tripping in the instant case. One of the participants in the rowdyism, Roger Kenny, indicated they were watching for Sherry while playing the game "Because we started playing rougher and rougher but we thought Mr. Sherry might yell at us or stop us." Kenny also indicated that if Sherry had looked in on the class the game would have been stopped "Because we were playing rough." This testimony, before a jury, would permit an

[13] This fact was recognized by the dissenters in *Thompson v. Board of Education of City of New York* (1938), 255 App. Div. 786, 6 N. Y. Supp. (2d) 921, 922.

[14] *Supra,* footnote 10, at page 316.

inference that Sherry's absence was *sine qua non* to the injury in this case, even if it is accepted that the injuries in *Ohman* and *Guyten, supra,* might have happened even if the teacher had been present.

It does not seem inherently unreasonable to expect that teachers will be present in classes which they are entrusted to teach. This should not, of course, mean that a teacher who absents himself from a room is negligent as a matter of law. As this court said in *Grosso v. Wittemann,*[15] the teacher's duty is to use "reasonable care." What this means must depend upon the circumstances under which the teacher absented himself from the room. Perhaps relevant considerations would be the activity in which the students are engaged, the instrumentalities with which they are working (band saws, dangerous chemicals), the age and composition of the class, the teacher's past experience with the class and its propensities, and the reason for and duration of the teacher's absence. Even if the teacher is found to be negligent, when the injury is the result of rowdyism or intentional conduct, the question of intervening and superseding cause arises, as does apportionment of negligence. The question will be whether, under all the circumstances, the teacher acted reasonably.[16]

The trial court also found that even if the conduct of Paul Sherry created a jury question on negligence, the conduct of Donald Cirillo was such that it constituted 50 percent or more of the negligence as a matter of law, thus precluding a recovery for the plaintiff and rendering a trial futile. This court has many times recognized that comparison of causal negligence under sec. 895.045, Stats.,

[15] *Supra,* footnote 6, at page 20.

[16] See Anno. Tort liability of public schools and institutions of higher learning, 86 A. L. R. (2d) 489, 554, sec. 46; Anno. Personal liability of public school officers, or teachers or other employees for negligence, 32 A. L. R. (2d) 1163.

is peculiarly a jury function, and only in rare cases is it permissible for a court to hold as a matter of law that the negligence of one party must constitute at least 50 percent of the total.[17]

"This court has often said that while there are cases where the circumstances are such that a court can properly rule as a matter of law that the negligence of one of the parties is equal to that of the other, such cases are extremely rare and the apportionment of negligence is almost always for the jury."[18]

This does not, however, mean it is never permissible for the court to hold as a matter of law that the plaintiff's conduct reflects at least 50 percent of the negligence.[19] Furthermore, the age of the respective parties is a relevant consideration in comparing their negligence.[20] When the negligence of a youth is being compared with that of an adult, this court is particularly reluctant to interfere.[21]

The question is, therefore, whether the affidavits in support of defendants' motion for summary judgment establish as a matter of law that this is one of those rare cases where the comparison of negligence question is to be assumed by the court. We conclude that the apportionment of negligence in the instant case is a jury question.

Summary judgment is a poor device for deciding questions of comparative negligence. What is contemplated

[17] *Baumgarten v. Jones* (1963), 21 Wis. (2d) 467, 471, 124 N. W. (2d) 609; *Rewolinski v. Harley-Davidson Motor Co.* (1966), 32 Wis. (2d) 680, 684, 146 N. W. (2d) 485.

[18] *Mix v. Farmers Mut. Automobile Ins. Co.* (1959), 6 Wis. (2d) 38, 41, 93 N. W. (2d) 869.

[19] See *Rewolinski v. Harley-Davidson Motor Co., supra,* footnote 17, at page 684.

[20] Wis J I—Civil, Part II, 1582; *Blahnik v. Dax* (1963), 22 Wis. (2d) 67, 74, 125 N. W. (2d) 364; *Brice v. Milwaukee Automobile Ins. Co.* (1956), 272 Wis. 520, 76 N. W. (2d) 337.

[21] *Blahnik v. Dax, supra,* footnote 20, at page 74.

by our comparative-negligence statute, sec. 895.045, is that the totality of the causal negligence present in the case will be examined to determine the contribution each party has made to that whole. It is the "respective contributions to the result" which determine who is most negligent, and by how much.[22] A comparison, of course, assumes the things to be compared are known, and can be placed on the scales. If a defendant, on summary judgment, is to be permitted to set forth in his affidavits the conduct of the plaintiff, and seek summary judgment on the ground the plaintiff's negligence outweighs his own as a matter of law, the only recourse to the plaintiff is to set forth in his counteraffidavits all of the conduct of the defendant. The upshot is a trial on affidavits, with the trial court ultimately deciding what is peculiarly a jury question. Our summary-judgment statute does not authorize a trial by affidavits.[23] The granting of summary judgment on this ground cannot be sustained.

Although we conclude that the apportionment question should not be determined at this point by the motion for summary judgment, this does not preclude the trial court, after all the evidence is in, from ruling, if the circumstances warrant, that the plaintiff's negligence is at least as great as the defendant's.

Finally, it is contended on behalf of the defendants that to permit a recovery by plaintiffs under these circumstances would be to constitute the defendants the insurer of the safety of Milwaukee school children. The trial court was of this opinion. While it is true this court has recognized that a teacher is neither immune from liability nor is he an insurer of his students' safety, he is liable

---

[22] *Mix v. Farmers Mut. Automobile Ins. Co., supra,* footnote 18, at page 43, quoting from *Taylor v. Western Casualty & Surety Co.* (1955), 270 Wis. 408, 411, 71 N. W. (2d) 363.

[23] *Trczyniewski v. Milwaukee* (1961), 15 Wis. (2d) 236, 112 N. W. (2d) 725; *Hyland Hall & Co. v. Madison Gas & Electric Co.* (1960), 11 Wis. (2d) 238, 245, 105 N. W. (2d) 305.

for injuries resulting from his failure to use reasonable care.[24] To permit a recovery where the defendant is found to be negligent is not to render that defendant an insurer.

*By the Court.*—Judgment reversed.

[24] *Grosso v. Wittemann, supra,* footnote 6, at page 20.