KIRBY BUILDING SYSTEMS, a Texas corporation, Appellant (Defendant),

Centric Corporation, a Colorado corporation; Gardner-Zemke Company, a New Mexico corporation, (Defendants),

v.

MINERAL EXPLORATIONS COMPANY, a California corporation; and Union Oil Company of California, a California corporation, Appellees (Plaintiffs).

MINERAL EXPLORATIONS COMPANY, a California corporation; and Union Oil Company of California, a California corporation, Appellants (Plaintiffs),

v.

CENTRIC CORPORATION, a Colorado corporation; Gardner-Zemke Company, a New Mexico corporation; and Kirby Building Systems, a Texas corporation, Appellees (Defendants).

Nos. 84–190, 84–191.

Supreme Court of Wyoming.

Aug. 1, 1985.

Glenn Parker, and Alan B. Minier, of Hirst & Applegate, Cheyenne, for Kirby Building Systems.

John A. MacPherson, of Johnson, Mac-Pherson & Noecker, Rawlins, Raymond J. Turner, and Craig R. Maginness, of Sherman & Howard, Denver, Colo., for Mineral Explorations Co. and Union Oil Co. of California.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROSE, Justice.

This appeal comes here with the appellant-defendant Kirby Building Systems in Case No. 84–190 asking this court for a decision on the following issues:

(1) Whether the evidence was sufficient to support the damage verdict;

(2) Whether the judgment was properly calculated by the trial court in conformity with the comparative-negligence statutes; and

(3) Whether the Right to Contribution Among Joint Tortfeasors statutes are applicable and, if they are, were they properly applied.

The plaintiffs, Mineral Explorations Company and Union Oil Company of California,[1] are satisfied with the verdict, but they have lodged an appeal in Case No. 84–191 which they seek to pursue only in the event that the verdict upon which judgment was entered in their favor in Case No. 84–190 is reversed and remanded. It will not be necessary to consider Union's appeal, since we will affirm the trial court's judgment in Case No. 84–190.

This litigation grew out of a fire which occurred on October 23, 1980, which was caused by ignition of fiberglass plastic panels used to line the inside of the building. The plaintiffs were the owners and operators of the Sweetwater Uranium Mill, where the destroyed structure was located. Since the parties could not agree on liability or damages, they have applied to the courts for assistance.

Plaintiffs' complaint was lodged against the following defendants: Kaiser, Inc.; Centric Corporation; Drake Building Corporation; Gardner-Zemke Company; Kirby Building Systems, Inc.; Reichhold Chemicals, Inc.; Electric Services Co.; M.M. Sundt Construction Co.; and Bill Boyles. Of these defendants, Kaiser, Drake, Reich-

hold, and Sundt settled, leaving only Kirby, Centric and Gardner-Zemke to go to trial as defendants. Centric has not perfected an appeal, and Gardner-Zemke is not liable since its negligence was found not to be greater than the negligence of the plaintiff.[2] This leaves only the issues identified by Kirby in case No. 84–190 to be resolved in this opinion.

*Background*

The amended complaint alleged that Kaiser contracted with Union Oil for engineering, procurement and construction services for a uranium ore processing mill. Kaiser subcontracted with Centric for the construction of pre-engineered metal buildings to house the mill facilities and equipment. These buildings were to be lined with fiberglass panels. Centric eventually procured the buildings and the liner panels from Kirby through Kirby's franchisee, Drake. The panels were manufactured and sold to Kirby by Reichhold, and were not flame retardant in accord with specifications prepared by Kaiser. Gardner-Zemke, Electric Services and M.M. Sundt were all subcontractors on the jobsite the day a fire broke out and consumed one of the buildings lined with the fiberglass panels, and Boyles was a welder who, the record indicates, was the one responsible for starting the fire. The plaintiffs charge that the fire would not have occurred if the fiberglass panels had been flame retardant. The various defendants were sued on theories of negligence, breach of warranty, breach of contract and strict liability in tort.

The trial judge granted motions which eliminated all of plaintiffs' claims for breach of contract, breach of warranty and strict liability, and granted the summary judgment to one contractor-defendant, Electric Services Co. The case then went to trial against Kirby, Centric and Gardner-Zemke on negligence theories only, with the jury returning a verdict for $8,392,216.90.

---

1. The appellees, Mineral Explorations Company and Union Oil Company of California, will usually be referred to as "Union."

2. See discussion of comparative negligence infra.

Kirby does not contest the jury's finding of negligence, and outlines the issues for our review as follows:

"A. Plaintiffs did not sustain their burden of proof with respect to damages.

"B. The judgment of the trial court was not entered in conformity with the verdict of the jury and the Wyoming Comparative Negligence Act.

"C. Even if the Wyoming Contribution Among Tortfeasors Act was pertinent to calculation of the verdict, the [trial] court did not properly apply the statute."

## ISSUE NO. 1

### Sufficiency of the Evidence To Establish Reasonableness and Necessity

In reviewing the sufficiency of the evidence to support a jury's verdict, this court has held that

" * * * It is axiomatic in this jurisdiction that the evidence most favorable to the prevailing party must be considered, that every favorable inference be given to it, and that if it is sufficient the determination of the trier of fact will not be disturbed." Berry Refining Company v. Pinsky, Wyo., 443 P.2d 521, 523 (1968).

The standard by which we review a substantial-evidence question concerning issues pertaining to proof of damages was expressed in Douglas Reservoirs Water Users Association v. Cross, Wyo., 569 P.2d 1280, 1283 (1977), as follows:

"In matters of evidence on review, we apply the monotonously repeated rule that an appellate court must assume evidence in favor of a successful party to be true, leave out of consideration the conflicting evidence of the unsuccessful party and give the evidence of the successful party every favorable inference which may be reasonably drawn from it. Oedekoven v. Oedekoven, Wyo.1975, 538 P.2d 1292 * * *."

Kirby does not contend that Union's accounting records are inaccurate or that the moneys that they reflect were not spent for reconstruction. In fact, Kirby's own accountant testified that Union and Minerals Exploration

" * * * have an accounting system that is designed to accurately record the costs."

Kirby's only objection to Union's damage evidence centers around its contention that the appellee failed to introduce sufficient evidence that the amount expended for reconstruction was reasonable and necessary.

In South Cheyenne Water and Sewer District v. Stundon, Wyo., 483 P.2d 240, 243 (1971), we said:

"The measure of damages to property which can be repaired and substantially restored to its former condition is the reasonable cost of repair or restoration. Allied Hotels, Limited v. Barden, Okl., 389 P.2d 968, 973; Parker v. Harris Pine Mills, 206 Or. 187, 291 P.2d 709, 717, 56 A.L.R.2d 382; Burr v. Clark, 30 Wash.2d 149, 190 P.2d 769, 774; Natural Soda Products Co. v. City of Los Angeles, 23 Cal.2d 193, 143 P.2d 12, 17, certiorari denied 321 U.S. 793, 64 S.Ct. 790, 88 L.Ed. 1082, rehearing denied 322 U.S. 768, 64 S.Ct. 942, 88 L.Ed. 1594."

The testimony pertaining to reasonableness and necessity of the costs for reconstruction in the case at bar may be summarized as follows:

The resident engineer at the Sweetwater Uranium Project testified to the type and extent of damage caused by the fire and to the necessity of replacing certain equipment in the mill. This witness related that he regularly observed the progress of the reconstruction effort and that the work was done efficiently, without wasted time or effort. He said that no equipment was replaced which did not need replacing.

Concerning the Kaiser charges for the reconstruction, which accounted for $5,230,246.50 of plaintiffs' damage claim, the actual progress billings, including back-up invoices and Kaiser time cards, were introduced. Plaintiffs sought to recover for the charges on only the first 13 Kaiser

billings, even though another 18 were sent to and paid by Union. The record reveals that the plaintiffs eliminated from their claim all questionable costs, including travel expenses, office supplies and vehicle maintenance.

The Sweetwater Uranium Project manager, Larry Dykers, who holds a degree in mining and engineering, testified to the reasonableness and necessity of the reconstruction effort. This witness had been appointed to head the reconstruction management and coordination team and was intimately involved in all phases of the job. He reviewed and developed the reconstruction and cleanup plan, personally inspected the work on the project numerous times each day, and participated in the daily planning regarding equipment replacement and work-force assignments.

Mr. Dykers testified regarding the type of damage which was suffered and the extent of the necessary cleanup and repair. He related that the labor was performed with a high degree of efficiency and that no equipment was replaced which did not need to be replaced. He testified that there were instances of equipment damage warranting replacement but the items were not replaced as a matter of expediency.

Mr. Dykers explained that the work performed and equipment replaced in the reconstruction effort was necessary to repair the mill. He further stated that the amount claimed by Union as damages for repair of the fire damage was reasonable. This testimony was supported by the fact that Mr. Dykers had prepared an estimate that the reconstruction would cost approximately $8,000,000 as part of his duties as project manager. The $6.4 million claimed by plaintiffs for the reconstruction-cost element of their damage claim is well within the reasonable range of this estimate.

■ The jury was instructed that an award for the property damage caused by the fire should be "the reasonable expense of necessary repair." Including the claim for lost profits, Union introduced evidence indicating a total loss of $11,571,672.50 as a result of the fire. Given this and other record testimony and evidence, we find that the jury's award of $8,392,216.90 was well within the range of damages supported by the evidence pertaining to the issue of reasonableness and necessity.

### ISSUE NO. 2
*The Judgment Calculation and the Comparative-Negligence Statute*

The jury found the tortfeasors' percentage of negligence to be:

| | |
|---|---|
| "Kaiser, Inc. | 5%; |
| "Centric Corporation | 20%; |
| "Drake Building Corporation | 35%; |
| "Gardner-Zemke Company | 5%; |
| "Kirby Building Systems, Inc. | 30%; |
| "Reichhold Chemicals, Inc. | 0%; |
| "M.M. Sundt Construction Company | 0%; |
| "Minerals Exploration Company and Union Oil Company of California | 5%," |

and the sum that would reasonably compensate the plaintiffs for their damages to be $8,392,216.90. In calculating its judgment, the trial court took into account the 5% that the jury found the plaintiff to be negligent, together with the fact that the plaintiff had settled or executed a covenant not to sue with the following parties in consideration for the following dollar amounts:

| Party | Amount |
|---|---|
| Kaiser | $185,000.00 |
| Drake | $250,000.00 |
| Reichhold | $600,000.00 |
| M. M. Sundt | $150,000.00 |
| TOTAL | $1,185,000.00 |

In preparation of his judgment, the trial judge reduced the verdict of $8,392,216.90 by the 5% which the jury found the plaintiff to have been negligent—i.e., $419,-610.85, and by the total amount of the settlements and/or covenant-not-to-sue figure in the sum of $1,185,000.00, and entered judgment against Centric and Kirby jointly and severally for $6,787,606.05.

For easy reference, the trial court's allocation of fault as directed by the jury's verdict, the settlement figures, the jury verdict, and the judgment against Kirby and Centric appear as follows:

| Party | Fault % | Settlement |
|---|---|---|
| Drake | 35 | $250,000 |
| Kirby | 30 | —0— |
| Centric | 20 | —0— |
| Plaintiffs | 5 | —0— |
| Kaiser | 5 | 185,000 |
| Gardner-Zemke | 5 | —0— |
| M. M. Sundt | 0 | 150,000 |
| Reichhold | 0 | 600,000 |
| Total: | 100 | $1,185,000 |

| | |
|---|---|
| Jury verdict: | $8,392,216.90 |
| Reduced by plaintiff fault: | −419,610.85 |
| Reduced by total settlement: | −1,185,000.00 |
| Judgment against Centric and Kirby: | $6,787,606.05 |

Kirby argues that it was erroneous calculation for the trial court to have deducted the plaintiffs' negligence and the settlement amounts. It contends that the verdict of $8,392,216.90 should have been reduced by the sum total of all actors' fault except the fault of Kirby and Centric, the only two tortfeasors from whom the plaintiffs could collect. That is, Kirby urges that the plaintiffs' judgment should have been reduced to a figure which is 50% of the verdict—namely, $4,196,108.45—for which it would, with Centric, be jointly and severally liable. As can be seen, Kirby's calculation would cause it to be liable to the plaintiffs in an amount which is $2,591,497.60 less than the judgment entered by the court.

■ We cannot agree with the appellant's interpretation of Wyoming's law of comparative negligence and contribution among joint tortfeasors, and find that the trial judge calculated the judgment exactly as provided by the applicable statutes and case law of the state of Wyoming.

We will affirm.

3. In *Palmeno v. Cashen*, Wyo., 627 P.2d 163, 166 (1981), we said:
"Under its own terms, § 1–1–109, supra, becomes operative in those cases only where the plaintiff is contributorily negligent. Where

## COMPARATIVE NEGLIGENCE

*All of the Actors' Negligence Must be Ascertained, Compared, and the Plaintiffs' Negligence Must be Deducted From the Verdict*

### The Plaintiffs' Negligence

In order to compare negligence of tortfeasors under Wyoming law, the percentage of plaintiff's fault must be ascertained. The Wyoming comparative-negligence statute, § 1–1–109(a), W.S.1977, provides:

"Contributory negligence shall not bar a recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if the contributory negligence was not as great as the negligence of the person against whom recovery is sought. Any damages allowed shall be diminished in proportion to the amount of negligence attributed to the person recovering." [3]

In *Board of County Commissioners of Campbell County v. Ridenour*, Wyo., 623 P.2d 1174, 1183, *reh. denied* 627 P.2d 163 (1981), we said:

" * * * [T]he simple language of the statute is that the percentage of the plaintiff's negligence will be compared to the percentage of negligence attributed to *the person* against whom recovery is sought.' (Emphasis added.)"

In fact, the reasons for ascertaining the percentage of plaintiff's fault are twofold. One purpose is to determine whether and against whom plaintiffs can recover, since the plaintiff or plaintiffs will be allowed to recover only against those defendants whose negligence caused the injury and whose fault is greater than that of the party seeking recovery. *Board of County Commissioners of Campbell County v. Ridenour*, supra; § 1–1–109(a). The second reason for determining the percentage of plaintiff's fault is to enable the court, in formulating its judgment, to calculate the

the plaintiff is found to have been free from negligence, the statute does not apply. If the plaintiff's negligence is found to be nil, then his recovery is not diminished."

amount that the damage award should be reduced—if any. Section 1–1–109(a).

*The Totality of the Actors' Negligence Must be Determined*

In *Connett v. Fremont County School District No. 6*, Wyo., 581 P.2d 1097 (1978), we cited with approval *Cirillo v. City of Milwaukee*, 34 Wis.2d 705, 150 N.W.2d 460 (1967), a Wisconsin case (from which state we took our comparative-negligence statute) for the following proposition:

" * * * * ' * * * What is contemplated by our comparative negligence statute * * * is that the totality of the causal negligence present in the case will be examined to determine the contribution each party has made to that whole.' * * *
"See generally, Heft and Heft, Comparative Negligence Manual, § 5.130 (1971)."

■ Thus, under the comparative-negligence statute, in the case of either single or multiple plaintiffs or defendants, a negligent plaintiff would be precluded from recovering against any defendant causing injury who is found to be less at fault than the plaintiff. *Board of County Commissioners of Campbell County v. Ridenour*, supra; § 1–1–109(a). This means that the liability of any party may be determined only when each actor's percentage of fault is known. We have said:

" * * * [I]n a comparative negligence case the jury must consider the negligence of not only the parties but all the participants in the transaction which produced the injuries sued upon."[4] *Board of County Commissioners of Campbell County v. Ridenour*, 623 P.2d at 1191.

■ The requirement that all participants' fault be ascertained means that the fault of nonparty actors as well as party tortfeasors must be calculated by the factfinder. In *Palmeno v. Cashen*, Wyo., 627 P.2d 163, 165–166 (1981), we said:

" * * * Under comparative negligence law in this state, the trier of fact should find the percentage of negligence attributable to each of the actors who have

proximately caused the plaintiff's injuries regardless of whether the actors have been named as parties to the lawsuit. *Board of County Commissioners of the County of Campbell v. Ridenour*, Wyo.1981, 623 P.2d 1174; *Cline v. Sawyer*, Wyo.1979, 600 P.2d 725; *Beard v. Brown*, Wyo.1980, 616 P.2d 726. The purpose of this requirement is to accurately gauge the percentage of plaintiff's own contributory negligence, if present, which is an important finding since it will operate to reduce a plaintiff's recovery or completely preclude recovery if greater than that of each of the actors, separately determined on a one-on-one basis. *Ridenour*, supra."

■ Even though the nonparty actors' percentage of negligence must be ascertained so that the parties' percentage of negligence may be accurately disclosed, the nonparty actor is, of course, not bound by the degree of fault fixed by the jury, *Board of County Commissioners of Campbell County v. Ridenour*, supra, nor does the nonparty actor have any direct influence upon any party's ability to recover in the action. The nonparty actor's negligence is not compared with the negligence of the party, because recovery is not sought from a nonparty. The nonparty actor does, however, influence the comparison process in the sense that his fault is contemplated along with the fault of the parties for purposes of determining whether the plaintiff may recover from a defendant or from defendants for the injury for which recovery is sought. *Board of County Commissioners of Campbell County v. Ridenour*, supra. Logic dictates that, if the negligence of an actor who is not a party is not included in the comparative-negligence calculation, the percentage of negligence of defendants who are parties may be inflated, and this would have a detrimental impact upon the comparison of the fault of the plaintiff and the several defendants in reaching a determination as

---

**4.** Although not in issue here, we went on to point out in *Ridenour* that, in apportioning

fault, only the negligence relative to a given injury need be compared.

to liability of some or all of the defendants to the plaintiff.

Once the percentage of each actor's fault summing to 100% is known, the defendants from whom the plaintiff may recover, if any there be, become apparent.

■ Contrary to the understanding of Kirby as revealed by its brief, the comparative-negligence statute also contemplates that any recovery must be reduced by a figure which represents the plaintiff's percentage of fault, if any. *Board of County Commissioners of Campbell County v. Ridenour*, supra; § 1–1–109(a).

### Against Whom May the Plaintiff Seek Judgment?

■ All defendants against whom the plaintiff is allowed to recover are jointly and severally liable to the plaintiff for the sum fixed by the factfinder, reduced by the plaintiff's dollar fault percentage of the total fault,[5] and the plaintiff's recovery cannot be diminished by any but his own negligence.[6] *Board of County Commissioners of Campbell County v. Ridenour*, supra. In *Ridenour*, we quoted the Wisconsin Supreme Court in *Walker v. Kroger Grocery & Baking Co.*, 214 Wis. 519, 252 N.W. 721, 727–728 (1934), where that court said:

"* * * [F]rom every * * * tortfeasor whose negligence was greater than that of the person seeking to recover, there exists now, by virtue of the statute, a right to recover, subject, however, to the limitation prescribed by the statute, that the damages allowed shall be diminished in proportion to the negligence attributable to the person recovering. *That is the only limitation prescribed in respect to the amount recoverable.* Otherwise, there is no provision which effects any change in the common-law rule that all tort-feasors who are liable at all are lia-

ble to the injured person for the entire amount now recoverable by him." (Emphasis added.)

■ From the foregoing, it becomes apparent that appellant Kirby has misinterpreted the law of comparative negligence when it argues that (a) the plaintiffs' negligence need not be deducted, and (b) the combined percentage that tortfeasors Kirby and Centric's fault bears to the total fault should be held to represent a maximum percentage of any verdict for which they could be held jointly or severally liable. As has been explained above, and as is contemplated by statute (§ 1–1–109(a)) and interpretative case authority, the plaintiffs' percentage of fault, if any, must first be converted to a dollar figure and subtracted from the verdict. If there are defendants whose fault exceeds that of the plaintiff, the plaintiff may proceed against any or all of such tortfeasors jointly or severally for the full amount of the judgment, and, contrary to the position of the appellant Kirby, no other reduction may be made from the verdict figure which reduction is based upon the fault of a tortfeasor.

These rules are summarized in XVIII Land & Water L.Rev. 713, 723, Comments, *Comparative Negligence Practice in Wyoming,* as follows:

"Comparisons are always one-on-one. Recovery is only allowed when the claimant is less negligent than the party from whom recovery is sought. The claimant's recovery is reduced by the amount of his own negligence but no one else's; therefore, if a party is liable, he is liable for the whole of the claimant's damages reduced by the claimant's own negligence. Causal negligence, and no other legal relationship, defines the parties among whom negligence is apportioned. The existence of a legal claim determines which party's negligence is relevant for

---

5. Again, this proposition runs afoul of the appellant's position, since Kirby argues that the plaintiff's verdict should be reduced by all except the combined fault of such party tortfeasors as are liable to the plaintiffs.

6. This proposition is not to be confused with the reduction from the amount fixed by the factfinder of those sums received by the plaintiff in settlement under the Right to Contribution Among Joint Tortfeasors statutes and particularly § 1–1–113, discussed infra.

purposes of comparison. Finally, a non-party actor's negligence is relevant for no purpose other than the apportionment of negligence."

## ISSUE NO. 3

## CONTRIBUTION AMONG JOINT TORTFEASORS

*Settlement—Calculating the Judgment*

As we have noted, the trial court first reduced the verdict by the percentage of the plaintiffs' negligence and then by the total amount of all settlements. The settlement reduction was purportedly effected in compliance with Wyoming's Right to Contribution Among Joint Tortfeasors statutes, § 1-1-113 of which provides:

"*Release or covenant not to sue.*

"(a) When a release or a covenant not to sue or not to enforce judgment is given in good faith to one (1) of two (2) or more persons liable in tort for the same injury or the same wrongful death:

"(i) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; *but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater*; and

"(ii) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor." (Emphasis added.)

*Should the Right to Contribution Among Joint Tortfeasors Statutes Play a Part in Calculating the Judgment?*

It is one of Kirby's contentions that the Right to Contribution Among Joint Tortfeasors statutes had no place in the formulation of the judgment entered by the trial court.

The appellant Kirby puts its contention this way:

"Under the circumstances of this case, the Wyoming Comparative Negligence Act required the Court to ignore settlements and settlement documents in calculating the Judgment. Instead, the Court should have calculated the Judgment based upon the shares of fault allocated to Centric and Kirby, the two tortfeasors from whom Plaintiffs can recover. Since the Centric and Kirby shares of fault were 20% and 30% respectively, Judgment should have been entered against them, jointly and severally, for 50% of the verdict found by the Jury. Judgment should therefore have been entered against Centric and Kirby for $4,196,108.45."

*Settlement*

The apparent purpose of the foregoing argument is to fortify appellant's contention that the contribution statutes are not relevant to the judgment-calculating process in this case, and that it is only the percentages of negligence of actors not responsible to the plaintiffs that may and must be deducted from the verdict figure in calculating the judgment. This would include Drake's 35%, plaintiffs' 5%, Kaiser's 5%, and Gardner-Zemke's 5%. This misinterpretation of statutes and case law leads to the fallacious conclusion that the Right to Contribution Among Joint Tortfeasors statutes do not come into play for purposes of reducing that which the plaintiff may recover upon the verdict by the total dollar amount of all settlements by virtue of § 1-1-113(a)(i).

■ In a Comment in IX Land & Water L.Rev. 590, *Wyoming's Contribution among Joint Tortfeasors*, the author says that, in adopting the contribution concept, our legislature was influenced by

" * * * the growing recognition that the right of contribution among tortfeasors is a desirable, if not necessary, corollary of comparative negligence legislation."

The rationale for this statement is that, were there no contribution statutes, the defendant against whom the plaintiff chooses to proceed would be required to

bear the entire burden of the judgment even though his percentage of fault might be minimal with respect to other tort-feasors and only barely in excess of the plaintiff's fault. This offends the public policy announced by the legislature through the enactment of the comparative-negligence and contribution statutes which holds that all actors in negligence suits, whether they be parties or not, must bear their fair share of the compensation burden.[7] If *all* tortfeasors, including defendants and nonparty actors, were not required to participate in the sharing process, the policy of the state would be frustrated. Thus, the comparative-negligence statutes and the Right to Contribution Among Joint Tortfeasors statutes are inter-related and must be read and considered together.

In pursuit of the policy described by the legislature, settlements are made attractive in that a nonsettling tortfeasor may not collect contribution from a fault-contributing actor who has settled with the plaintiff,[8] but, if the settlement extinguishes the liability of other tortfeasors, the settler retains a right of contribution from nonsettling tortfeasors.[9] A plaintiff who settles with a tortfeasor will not be permitted to recover an amount which is in excess of his verdict, and, thus, his verdict will be reduced by the amount stipulated in the settlement or in the amount of the consideration paid for the release, whichever is greater. See § 1–1–113(a)(i), supra. In these circumstances, if the amount paid for the settlement is greater than the amount of the judgment eventually received, the judgment will always be satisfied by the settlement. In other words, the settling party cannot be placed in the position of having satisfied the entire judgment but of having no right to contribution because he was credited only with having satisfied his pro-rata share under the terms of the settlement. However, the settling party cannot recover excessive amounts paid for the settlement. Section 1–1–110(d).

The settlement will not discharge any actor except the settling tortfeasor unless the terms so provide. Section 1–1–113(a)(i). Any amount the plaintiff receives over and above his judgment may be retained by the plaintiff, but, of course, if the plaintiff were to receive an amount of money in settlement that exceeds the amount of his judgment, he would not be entitled to recover anything further on his judgment.

■ From the foregoing, it appears clear that the policy of comparative negligence, which seeks to eliminate the unjust concept of common-law contributory negligence by permitting negligent plaintiffs to

7. Section 1–1–110(a) and (b), W.S.1977, provide for equitable distribution of the burden of the judgment among tortfeasors:

"(a) Except as otherwise provided in W.S. 1–1–110 through 1–1–113, where two (2) or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

"(b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is compelled to make contribution beyond his own pro rata share of the entire liability."

Section 1–1–112(a), W.S.1977, permits a defendant who pays more than his pro rata share of a judgment to bring a separate action against a nonparty actor for contribution:

"(a) Whether or not judgment has been entered in an action against two (2) or more tortfeasors for the same injury or wrongful death, contribution may be enforced by separate action."

While no right of contribution exists against settling tortfeasors, § 1–1–113(a)(ii), the judgment borne by the nonsettling actors is reduced by the greater of the amount specified in the release or the consideration paid for it. Section 1–1–113(a)(i).

8. Section 1–1–113(a)(ii), W.S.1977, provides:

"It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."

9. Section 1–1–110(d), W.S.1977, provides:

"A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in excess of what was reasonable."

recover from more negligent tortfeasors, cannot be discharged unless the burden among tortfeasors other than the plaintiff is also distributed equitably under the Right to Contribution Among Joint Tortfeasors statutes.

■ Hence, we hold that the contribution statutes are relevant and applicable for purposes of reducing the verdict in this case, in accord with § 1–1–113, W.S.1977.

*Even If the Right to Contribution Among Joint Tortfeasors Statutes Apply, Did the Trial Court Miscalculate the Judgment?*

Lastly, the appellants argue that even if the Right to Contribution Among Joint Tortfeasors statutes apply, the court has misinterpreted its meaning in calculating its judgment. Essentially, it is appellant's contention that the court should have employed a pro-rata share of fault calculation to reduce the verdict in consideration of the settlements instead of reducing the verdict by the dollars paid by each settler.

The proper way to reduce a plaintiff's verdict in consideration of a settling tortfeasor's payment is directed by § 1–1–113(a)(i). A release

" * * * reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is greater * * *."

The question, then, is whether the parties to the settlements in the case at bar contemplated that the consideration for the release was the dollar amount recited in the settling instruments—or was it something else.

The appellant argues that the court reduced the verdict by the dollar amount (i.e., the consideration) stipulated by the releases when it should have reduced the verdict by the total percentage of all except Kirby's and Centric's combined fault, since this would be the amount that is "greater." Section § 1–1–113(a)(i). The quick and definitive answer to this assertion is that § 1–1–113(a)(i) does not provide for a per-

centage-of-fault reduction. In fact, the very interpretation of the present statute which Kirby urges was formerly the statutory law of Wyoming, but these statutes have been amended in order to eliminate the pro-rata concept.

The original Wyoming Contribution Among Joint Tort-feasors statutes, § 1–7.3 to 1–7.6, W.S.1957, 1975 Cum.Supp., provided in pertinent part:

"§ 1–7.5. Same; effect of release of one tort-feasor; discharge.—A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides, but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if such amount or proportion is greater than the consideration paid."

"§ 1–7.6. Same; release of one tort-feasor; contribution.—(a) A release of one tort-feasor by the injured person relieves that tort-feasor from liability to make contribution to a joint tort-feasor only if:

"(i) That release is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued; and

"(ii) The release provides for a reduction to the extent of the pro rata share of the released tort-feasor of the injured person's damages recoverable against all the other tort-feasors; and

"(iii) The issue of proportionate fault is litigated between joint tort-feasors in the same action."

Thus, the old statutes contemplated (1) that a release given to a settling tortfeasor reduces the claim against other tortfeasors in either the amount or proportion by which the release provides or the amount or proportion of the consideration paid; (2) that the right of contribution is extinguished in favor of the settling tortfeasor only if the release provided for a reduction of the injured person's damages recoverable against all other tortfeasors to the extent

of the pro-rata share of the released tortfeasor.

In the Comment, *Wyoming Contribution Among Joint Tortfeasors*, supra, authored in 1974, this prior statute is criticized as follows:

"The effect of the pro rata reduction clause on the plaintiff's willingness to settle may thus be a profound one. It is quite understandable that a plaintiff would be hesitant to execute a settlement with a pro rata reduction clause if he knows that the reduction of his damages will depend not on his estimation of the settling tortfeasor's negligence, but rather on a later determination of his relative degree of fault by a jury. If he underestimates the fault of the settling tortfeasor, he may well recover less by having settled than if he had permitted the case against both defendants to proceed to trial. It is not likely either that a plaintiff will persuade a settling tortfeasor to execute a release without a pro rata reduction clause, because without it, the settling tortfeasor is liable for future contribution claims from tortfeasors brought to judgment to the same extent as if he had never made the settlement. The inevitable but unfortunate result under these two provisions of the new contribution statute will be fewer settlements in multiple defendant cases.

"The likelihood that neither party will settle the claim involved under the pro rata reduction clause and relative degree of fault provision was a major factor in the decision of the Commissioners on Uniform State Laws to withdraw the 1939 act for complete revision. A reconsideration of the pro rata reduction clause led the draftsmen of the 1955 act to conclude that it had accomplished nothing in preventing collusion, which was its original purpose, and they proceeded to abolish it, on the assumption that '[i]t seems more important not to discourage settlements than to make an attempt of doubtful effectiveness to prevent discrimination by plaintiffs, or collusion in the suit.' Accordingly, the 1955 act went the whole length, and now pro-vides that a good faith release discharges the tortfeasor outright from all liability for contribution."

In 1973, the legislature repealed the pro-rata reduction feature when it enacted § 1–1–113. Thus, the appellant Kirby argues for a statutory interpretation of what the statute *used to be*—not what it is or was when this cause of action arose or when this case was tried.

▉ We agree with appellee that Kirby's contention that the covenant not to sue executed by Union and Drake contemplated a pro-rata consideration is spurious. The covenant not to sue is controlled by § 1–1–113, and it "reduces the claim against the others [tortfeasors] to the extent of" $250,000, the "amount stipulated by the release or the covenant." Section 1–1–113(a)(i). The record contains no evidence that a greater amount of consideration was paid by Drake than the $250,000, nor does the record indicate that the other settling tortfeasors paid or intended to expend any other than the dollar-figure consideration indicated by their settling documents.

Lastly, the settling instruments of all settling tortfeasors clearly reveal that it was the dollar amount that the settlers paid for their releases under § 1–1–113, and these sums were, therefore, properly subtracted from the verdict in calculating the judgment.

We find that other contentions of Kirby are peripheral to those heretofore considered, and—except as discussed above—warrant no further consideration.

The judgment of the trial court is affirmed.

BROWN, Justice, specially concurring.

I agree with Justice Rooney that the majority "reached its result through a proper historical analysis of the case under existing statutes and previous case law." Rather than overrule our earlier cases and reverse, I would opt to affirm this case and urge the legislature to reexamine our stat-

utes and by appropriate legislation cure the inequities pointed out by Justice Rooney.

Under our statutory scheme, § 1–1–109, W.S.1977 (comparative negligence), and §§ 1–1–110 through 1–1–113, W.S.1977 (right to contribution among joint tortfeasors), a defendant with only slight fault could be required to pay the entire judgment (in the event the defendant who was principally at fault was insolvent). Also under our statutory scheme, a defendant who is principally at fault could settle for a token amount before trial and thus shift the remaining burden of a large judgment on a defendant whose fault is slight. (See examples set out by Justice Rooney in his dissent.)

I am not convinced the legislature intended the apparent inequity that I have pointed out. Our statutory scheme helps redistribute the wealth but I am not persuaded it is free from constitutional infirmities.

Kansas has a reasonable provision in its comparative negligence scheme:

"Where the comparative negligence of the parties in any action is an issue and recovery is allowed against more than one party, each such party shall be liable for that portion of the total dollar amount awarded as damages to any claimant in the proportion that the amount of his or her causal negligence bears to the amount of the causal negligence attributed to all parties against whom such recovery is allowed." Kan. Stat.Ann. § 60–258a(d) (1983).

This statutory provision was construed in *Brown v. Keill,* 224 Kan. 195, 580 P.2d 867, 874 (1978):

" * * * [W]e hold under the provisions of K.S.A. 60–258a the concept of joint and several liability between joint tort-feasors previously existing in this state no longer applies in comparative negligence actions. The individual liability of each defendant for payment of damages will be based on proportionate fault, and contribution among joint judgment debtors is no longer required in such cases."

ROONEY, Justice, dissenting.

The majority opinion reached its result through a proper historical analysis of the case under existing statutes and previous case law. The Honorable Kenneth G. Hamm, District Court Judge, handled the trial and related matters in his usual competent manner and applied the law as now developed in Wyoming to the issues in this case. However, it is time to settle the conflicting aspects of our law in this area to the end of obtaining equity and consistency. It is time to stop trying to rationalize the conflict between the comparative-negligence statute, § 1–1–109, W.S.1977, and the Contribution Among Joint Tortfeasors Act, §§ 1–1–110 through 1–1–113, W.S.1977.

The comparative-negligence statute abolished the common-law contributory-negligence rule, which allowed recovery for "all or nothing" depending upon the existence or nonexistence of *any* negligence on the part of the plaintiff, in favor of apportioning damages on the basis of fault. Under the common-law "all or nothing" rule, there was some sense in the rule carried forward in the Contribution Among Joint Tortfeasors Act making the liability of multiple defendants to be joint and several. This was because the negligence was determined on a unit basis and not on a "one to one" basis as mandated by the comparative-negligence statute.

The objective or purpose of the comparative-negligence statute is thwarted by the Contribution Among Joint Tortfeasors Act.

Stated again, the comparative-negligence statute is designed to apportion damages resulting from death or injury to person or property *according to fault.*

"§ 4. Purpose.

"The doctrine or rule of comparative negligence is designed to eliminate the rigors of the common-law contributory negligence rule, and, in particular, the 'all or nothing' effect of that rule, by either modifying or completely abrogating it in this particular respect." Am.Jur.2d New Topic Service, Comparative Negligence, § 4 (1977).

"The term 'comparative negligence' might be used to describe any system of law that by some method, in some situations, apportions costs of an accident, at least in part, on the basis of the relative fault of the responsible parties. * * *" Schwartz, Comparative Negligence, § 2.1 (1974).

"The hardship of the doctrine of contributory negligence upon the plaintiff is readily apparent. It places upon one party the entire burden of a loss for which two are, by hypothesis, responsible. The negligence of the defendant has played no less a part in causing the damage; the plaintiff's deviation from the community standard of conduct may even be relatively slight, and the defendant's more extreme; the injured man is in all probability, for the very reason of his injury, the less able of the two to bear the financial burden of his loss; and the answer of the law to all this is that the defendant goes scot free of all liability, and the plaintiff bears it all. * * *

\* \* \* \* \* \*

"An entirely different approach to the whole problem would be to divide the damages between the two parties. * * *

\* \* \* \* \* \*

"In the United States numerous statutes have been enacted providing for similar apportionment of damages according to fault. * * *" Prosser, Law of Torts, 4th Ed., § 67 (1971).

Our comparative-negligence statute is one of the statutes referred to by Prosser.

It is inconsistent and contrary to the obvious over-all legislative intent to interpret our statutes to apportion damages according to fault, and "one on one" as approved in the majority opinion, with respect to (1) the relationship between plaintiff and a defendant to determine the fact of liability, i.e., 50% fault, (2) measuring the negligence of *each* of several defendants against that of the plaintiff (see *Board of County Commissioners of County of Campbell v. Ridenour*, Wyo., 623 P.2d 1174, *reh. denied* 627 P.2d 163 (1981)), and (3) allowing contribution among joint tort-

feasors according to their "relative degrees of fault," and then to refuse to apportion the damages according to fault and "one on one" with respect to plaintiff's ability to recover the entire judgment from only one of several joint tortfeasors.

The inconsistency is apparent. All of the criticisms of the old common-law contributory-negligence rule are equally applicable to the result reached by the old common-law rule—whether incorporated into a statute or not—making each joint tortfeasor jointly and severally liable for a judgment in favor of the plaintiff.

The inconsistency, thus, also carries forward the inequity. A verdict finds plaintiff to have been damaged in the amount of $100,000. It apportions fault to plaintiff at 10%, to defendant X at 11%, and to defendant Y at 79%. Defendant Y is insolvent and pays nothing although the damage was primarily his fault. Plaintiff recovers, under the majority opinion, the full $100,000 from defendant X who was only slightly more at fault than plaintiff. If the objective or purpose of the statutory change from common-law contributory negligence to comparative negligence was to apportion damages according to fault, the same is completely lost in those instances involving multiple defendants when one of the defendants must bear damages completely beyond his fault.

The same can be said with reference to settlement by a joint tortfeasor. If the amount of his settlement is less than his proportionate fault, the other tortfeasors should not, by that fact, have their damages increased beyond their proportionate fault. The inequity is again illustrated by a hypothetical situation. A verdict finds plaintiff to have been damaged in the amount of $100,000. It apportions fault to plaintiff at 10%, to defendant X at 11% and to defendant Y at 79%. Defendant Y settles before trial at $1,000. Plaintiff recovers $99,000 from defendant X who was only slightly more at fault than plaintiff. Defendant X cannot obtain contribution from defendant Y since § 1–1–113(a)(ii),

W.S.1977, provides that a release or a covenant not to sue (which results from a settlement)

"* * * discharges the tortfeasor to whom it is given from all liability for *contribution* to any other tortfeasor." (Emphasis added.)

All of this is well said in the discussion of the contribution statute (under the heading of settlement) in the majority opinion:

"* * * were there no contribution statutes, the defendant against whom the plaintiff chooses to proceed would be required to bear the entire burden of the judgment even though his percentage of fault might be minimal with respect to other tortfeasors and only barely in excess of the plaintiff's fault. This offends the public policy announced by the legislature through the enactment of the comparative-negligence and contribution statutes which holds that all actors in negligence suits, whether they be parties or not, must bear their fair share of the compensation burden. If *all* tortfeasors, including defendants and nonparty actors, were not required to participate in the sharing process, the policy of the state would be frustrated. Thus, the comparative-negligence statutes and the Right to Contribution Among Joint Tortfeasors statutes are interrelated and must be read and considered together." (Footnote omitted and emphasis in original.)

If the policy announced by the legislature is to have all actors in a negligence suit "bear their fair share of the compensation burden," such policy should be equally applicable to those settling the case, to the plaintiff and to each defendant.

The Contribution Among Joint Tortfeasors Act provides a method for allocation of damages according to fault *among the multiple defendants* premised on the assumption that they all have assets sufficient to pay their share, but it completely abandons the policy from a practical standpoint in providing joint and several liability of the defendants to the plaintiff. As already noted, the result does not allocate the damages according to fault. It changes the allocation according to the ability to pay.

Accepting that the purpose, policy or objective of the legislature is to allocate damage in a negligence action according to fault, what do we do in interpreting the statutes, with statutory language purporting to retain the joint and several liability of multiple defendants?[1] The answer is obvious. We should do that which we are often called upon to do in interpreting and construing legislative enactments and give full force to the legislative intent.

In this instance, we must recognize the conflict between the Comparative Negligence Act and the Contribution Among Joint Tortfeasors Act. We must recognize that this inconsistency creates an ambiguity. *Town of Clayton v. Colorado & S. Ry. Co.*, 51 F.2d 977, 82 A.L.R. 417 (10th Cir.1931); *State ex rel. Rucker v. Tapp*, Okl., 380 P.2d 260 (1963). The inconsistency, per se, prevents the statutes from being clear and plain and thus not subject to statutory construction. *State ex rel. Motor Vehicle Division v. Holtz*, Wyo., 674 P.2d 732 (1983). Ambiguity exists where the words or groups of words in statutes are susceptible to more than one meaning, and resort shall then be made to rules of statutory construction. *Attletweedt v. State*, Wyo., 684 P.2d 812 (1984); *Matter of Estate of Reed*, Wyo., 672 P.2d 829 (1983). Ambiguity is doubtfulness, uncertainty or

---

1. For example, § 1–1–111, W.S.1977, reads in pertinent part:

"(a) In determining the pro rata shares of tortfeasors in the entire liability:

"(i) The relative degrees of fault of the joint tortfeasors shall be considered in determining their pro rata shares solely for the purpose of determining their rights of contribution among themselves, each remaining severally liable to the injured person for the whole injury as at common law."

And § 1–1–110(h), W.S.1977, reads:

"W.S. 1–1–110 through 1–1–113 do not affect the common law liability of the several joint tortfeasors to have judgments recovered and payment made from them individually by the injured person for the whole injury. * * *"

doubleness of meaning. Such always exists when there is an inconsistency or conflict in the language used.

" * * * When the language is not clear or is ambiguous, the court must look to the mischief the statute was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conclusions of law, and other prior and contemporaneous facts and circumstances, making use of the accepted rules of construction to ascertain a legislative intent that is reasonable and consistent. [Citations.]" *State ex rel. Motor Vehicle Division v. Holtz,* supra, 674 P.2d at 736.

" * * * Legislative policy may carry a statute beyond the strict letter. * * * " *State v. Capital Coal Co.,* 54 Wyo. 176, 88 P.2d 481, 483 (1939).

" * * * When the statute is ambiguous, the intent of the legislature must be ascertained from its terms in light of the objects and purposes intended to be accomplished. * * * " *Kamp v. Kamp,* Wyo., 640 P.2d 48, 50 (1982).

As already noted, the general intent of the legislature in enacting the comparative-negligence statute was to change the common-law contributory-negligence rule which made any negligence of the plaintiff a defense to his negligence action, and *to provide for allocation of damages on the basis of fault.* This is the policy and purpose of the Act. Accordingly, to maintain this objective, the inconsistent portions of the Contribution Among Joint Tortfeasors Act must be declared to be inoperative and of no force and effect. Specifically, I would hold that any requirement that each joint tortfeasor is jointly and severally liable for plaintiff's entire loss no longer exists under the comparative-negligence statute in actions for damages for death or injury to person and property resulting from negligence, each defendant to be liable only for that amount as his percentage of negligence in excess of that of the plaintiff bears to the total damages. This being so, there is no need for contribution, and any change from the historical rule prohibiting contribution is unnecessary. This

holding is consistent with the statutory change from the historical rule that a release of one tortfeasor releases all, and that portion of the Contribution Among Joint Tortfeasors Act which changes the historical rule in this respect would still be effective. See Prosser, Law of Torts, 4th Ed., §§ 47, 49 and 50.

This interpretation and construction follows, once it is recognized that the comparative-negligence statute allocates the damages between plaintiff and defendants on a "one to one" basis, *Board of County Commissioners v. Ridenour,* supra. The result does away with the inequity of having one only slightly at fault having to make payment for another who is greatly at fault. If one settles for an amount which turns out to be other than what would be his share, based upon his percentage of fault, any gain or loss will not be that of another defendant, but will be that of the plaintiff and settling defendant. The bargain between them will be just that—their bargain.

This position has been adopted by statute or by court action in other states. N.H. Rev.Stat.Ann. § 507:7–a (1983); Vt.Stat. Ann., Title 12,' § 1036 (1973); *Stannard v. Harris,* 135 Vt. 544, 380 A.2d 101 (1977); *Howard v. Spafford,* 132 Vt. 434, 321 A.2d 74 (1974); Nev.Rev.Stat. § 41.141(2)(a) and (b) (1979); Kan.Stat.Ann. § 60–258a(d) (1983); *Lester v. Magic Chef, Inc.,* 230 Kan. 643, 641 P.2d 353 (1982); *Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978); *Bartlett v. New Mexico Welding Supply, Inc.,* 98 N.M. 152, 646 P.2d 579, *cert. denied* 98 N.M. 336, 648 P.2d 794 (1982); *Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234 (1981); *Laubach v. Morgan,* Okl., 588 P.2d 1071 (1978), limited by *Boyles v. Oklahoma Natural Gas Company,* Okl., 619 P.2d 613 (1980), to case where plaintiff has some negligence; *Berry v. Empire Indemnity Insurance Company,* Okl., 634 P.2d 718 (1981); Ohio Rev.Code Ann. § 2315.19(A)(2) (Baldwin 1984); *Simonsen v. Barlo Plastics Co., Inc.,* 551 F.2d 469 (1st Cir.1977).

I would remand the case with directions to amend the judgment against Kirby to reflect Kirby's liability to be 30% of $8,392,-216.90 after reduction for 5% attributable to plaintiff's negligence, i.e., $8,392,216.90 less $419,610.85, or $7,972,606.05 times 30% or a total judgment against Kirby of $2,391,781.82.