**The STATE of Wyoming and G. M. Kinniburgh, Appellants (Defendants),**

v.

**Susan DIERINGER, Bonnie Roberts, and Connie Mark, Appellees (Plaintiffs).**

**No. 83–220.**

Supreme Court of Wyoming.

Oct. 8, 1985.

2

Glenn Parker and Alan B. Minier of Hirst & Applegate, Cheyenne, for appellants.

Richard H. Honaker, Rock Springs, and W. Keith Goody, Jackson, for appellees.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

THOMAS, Chief Justice.

The primary questions which must be resolved in this appeal are whether an employee of the State of Wyoming is immune from suit by virtue of the provisions of the Wyoming Governmental Claims Act, §§ 1-39-101, et seq., W.S.1977, and whether the State of Wyoming can claim a bar to this suit by virtue of a settlement of a claim against a different State employee, also pursuant to the provisions of the Wyoming Governmental Claims Act. Further issues are asserted relating to error by the district court in excluding additional witnesses and exhibits proffered by the defendants; the failure of the plaintiffs to establish that the actions of the defendant Kinniburgh were a proximate cause of the accident; and error with respect to a refusal to instruct the jury concerning the duty of an adjacent landowner. Finally the appellants assert error in the award of costs to the plaintiffs. We affirm the judgment entered by the trial court except for the amount of costs awarded, which we will require to be modified.

The appellant, G. M. Kinniburgh, a patrolman for the Wyoming Highway Patrol, asserts as the primary issue relating to him that the trial court erred in denying his motion for summary judgment because he is immune from suit pursuant to the provisions of the Wyoming Governmental Claims Act. The appellant, the State of Wyoming, further contends that it had achieved a compromise and settlement of any claims against it; the actions of the appellees, Susan Dieringer, Bonnie Roberts and Connie Mark, therefore were barred as to the State of Wyoming; and the trial court erred in not granting the State's motion for summary judgment. Both appellants claim error on the part of the district court in excluding the testimony of certain witnesses and certain exhibits on the ground that they had failed to give proper and timely notice of such additional witnesses and exhibits to the appellees prior to trial in accordance with the court's pretrial order. Both appellants assert as a further issue that this judgment must be reversed because the evidence did not establish that the conduct of patrolman Kinniburgh was a proximate cause of the injuries to the ap-

pellees, and the district court erred in refusing to grant their motion for a directed verdict, which in part was premised upon this insufficiency in the evidence. As a further issue the appellants assert that the district court erred in refusing to give to the jury their offered instruction relating to the duty and responsibility of Clark's Ready Mix, the owner of premises adjacent to the highway, which had been named as a party when the action was filed. The final issue asserted by both appellants is error on the part of the district court in awarding costs to the appellees.

On a mild day in February 1981, water was running across Highway 22 near the twon of Jackson from property adjacent to the highway owned by Clark's Ready Mix. The source of this water apparently was melting snow. As the temperatures cooled in the evening of that day a patch of black ice began to form on the highway from water tracked along the highway by passing vehicles. As night began to fall and the temperatures dropped more the patch of ice became larger and larger. It was primarily forming in the right lane of the highway as travelers were leaving the town of Jackson, at a point just beyond the crest of a hill at the beginning of a curve where vehicles normally would accelerate.

Around 7:30 p.m. a vehicle went out of control and off the road into the borrow pit when it encountered the ice. Patrolman Kinniburgh was called to the scene of that accident by a deputy of the Teton County Sheriff's Office. Marks at the scene of that accident indicated that other vehicles also had skidded off the road at that site, but apparently they were able to get back on the road without reporting any difficulty. At that time the deputy sheriff suggested that Patrolman Kinniburgh should call the Wyoming Highway Department to have the area sanded. Kinniburgh decided not to do that, articulating his decision in offensive language which undoubtedly had some impact upon the jury. He did not report the condition of the road or request that it be sanded.

About four hours later, at approximately 11:30 p.m., the three appellees were riding as passengers in a vehicle which skidded on this patch of ice, went out of control, crossed over into the other lane of traffic, and was struck by an oncoming truck. All three appellees suffered severe injuries in that accident. They brought suit, seeking recovery from Patrolman Kinniburgh, Jack Oakley, the Wyoming State Highway Department, the State of Wyoming, Clark's Ready Mix and Construction, and Lynn Clark and Lewell Clark. The Wyoming State Highway Department and the State of Wyoming were named as co-defendants in the separate counts of the complaint seeking recovery from Patrolman Kinniburgh and Jack Oakley, both of whom were employees of the State of Wyoming.

At the time Jack Oakley was employed by the Wyoming State Highway Department as the local maintenance foreman for the Wyoming State Highway Department. He was authorized to decide whether or not to sand the highway at any particular location, and he was not subject to the direction or control of Patrolman Kinniburgh. Lynn Clark and Lewell Clark owned the corporate stock of Clark's Ready Mix, and as indicated the water flowing across the highway came from premises owned by Clark's Ready Mix. Prior to trial, Lynn Clark, Lewell Clark, and Clark's Ready Mix stipulated with the appellees that the appellees' complaint against these parties would be dismissed with prejudice. Also prior to trial the State of Wyoming, Wyoming State Highway Department, and Jack Oakley moved for an order dismissing claims of the appellees against them because of a compromise and settlement of those claims. The order granting this motion was entered after the trial. The case actually went to trial then with only Patrolman Kinniburgh and the State of Wyoming as defendants. From judgments entered in favor of the several appellees appropriate appeals were taken which are consolidated in this case.

We will first address Kinniburgh's claim that he is immune from suit. He relies upon § 1-39-104, W.S.1977 (1985

Cum.Supp.), which provides in pertinent part as follows:

"(a) A governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided by W.S. 1–39–105 through 1–39–112. * *"

Kinniburgh concedes that § 1–39–112, W.S. 1977 (1985 Cum.Supp.), provides:

"A governmental entity is liable for damages resulting from tortious conduct of law enforcement officers while acting within the scope of their duties."

It is his contention, however, that immunity is granted pursuant to § 1–39–104, W.S. 1977 (1985 Cum.Supp.), and that § 1–39–112 creates an exception extending only to the governmental entity and not to the public employee. According to his theory it follows that there is no exception as to the public employee, and he enjoys immunity.

We dealt with a substantially identical claim in denying the petition for rehearing in *Hamlin v. Transcon Lines*, Wyo., 697 P.2d 606 (1985), reh. denied, 701 P.2d 1139 (1985). We there held that a public employee is not immune from suit based upon our analysis of the entire Wyoming Governmental Claims Act.

To what we said in *Hamlin v. Transcon Lines*, supra, we add the proposition that, given the state of the law in Wyoming at the time of the adoption of the Wyoming Governmental Claims Act, an employee of the State enjoyed immunity that can best be described as derivative from the immunity of the State. Against that legal history we can understand that in drafting the exceptions to immunity of the State and public employees the legislature must have assumed that when immunity of the State was withdrawn by virtue of an exception such as that contained in § 1–39–112 there remained no immunity for a public employee because that individual's immunity was purely dependent upon the immunity of the State. Read in this light the exceptions to immunity include both the State and the public employee involved, and the grant of the immunity in § 1–39–104, upon which Kinniburgh relies, must be perceived as limited to those situations not encompassed by the exceptions.

We note that *Oyler v. State*, Wyo., 618 P.2d 1042 (1980), which questioned the common-law immunity of public employees, had not been decided at the time of the adoption of the Wyoming Governmental Claims Act. The pertinent decisions at the time of the adoption of the act were *Osborn v. Lawson*, Wyo., 374 P.2d 201 (1962); and *Price v. State Highway Commission*, 62 Wyo. 385, 167 P.2d 309 (1946). The opinion in Price is somewhat equivocal because there was no need for this court to consider contributory negligence on the part of Price if Daly, the driver of the snowplow, was immune from liability. That proposition was substantially clarified in *Osborn v. Lawson*, supra, but it is there that the immunity of the employee is more clearly made dependent upon the immunity of the employer, the State of Wyoming.

■ In the light of what we said in *Hamlin v. Transcon Lines*, supra, together with the historical articulation of public employee immunity, it is clear that in adopting the Wyoming Governmental Claims Act the legislature did not intend to immunize the public employee from suit. His protection is found in the duty of the State to provide him a defense and to save him harmless and indemnify him against any claim or judgment arising out of an act or omission occurring within the scope of his duties in accordance with § 1–39–104(b), W.S.1977 (1985 Cum.Supp.). There was no error in refusing to grant Kinniburgh's motion for summary judgment.

■ The motion for summary judgment on behalf of the State of Wyoming specifically invokes the provisions of § 1–39–116(b), W.S.1977 (1985 Cum.Supp.), which provides:

"(b) The judgment in an action or a settlement under this act constitutes a complete bar to any action by the claimant, by reason of the same transaction or occurrence which was the subject matter

of the original suit or claim, against the governmental entity or the public employee whose negligence gave rise to the claim."

The State of Wyoming then asserts the effect of its settlement of the counts of the complaint relating to the State of Wyoming, Wyoming State Highway Department, and Jack Oakley is to bar this action. The Motion to Dismiss, which was granted by the court in favor of the State of Wyoming, Wyoming State Highway Department, and Jack Oakley, stated, after reporting the basis of the settlement with the several appellees:

"* * * However, it is not the intention of Plaintiffs and said Defendants for the Court to dismiss claims against the State of Wyoming, Wyoming State Highway Department and G.M. Kinniburgh as alleged in Counts III and IV of Plaintiffs' Complaint and said claims have not been settled."

In the "Release and Covenant Not to Sue or Execute" attached to the Motion to Dismiss the following language is found:

"This agreement, however, is not intended by the parties hereto to release any claim against the State of Wyoming, Wyoming State Highway Department and G.M. Kinniburgh for injuries and damages sustained by Plaintiffs as a result of the intentional or negligent acts or omissions of G.M. Kinniburgh or other agents or employees of the Wyoming Highway Patrol, as alleged in Counts III and IV of Plaintiffs' Complaint. * * *"

We can say without fear of contradiction that separate insurance carriers were defending the claims asserted against Jack Oakley and Patrolman Kinniburgh. The State of Wyoming then accepted the Release and Covenant Not to Sue or Execute as limited by the language quoted above, and confirmed that limitation in its Motion to Dismiss presented to the district court. That limitation was recognized in the order entered which limited dismissal to those claims "as alleged in Counts II and IV." In a case not involving the State of Wyoming this court has upheld the reservation of a right to sue contained in a covenant not to execute. *Lopez. v. Arryo,* Wyo., 489 P.2d 626 (1971).

Without addressing the unconscionability of the position of the State of Wyoming in this instance, we hold that the issue of the State's claim that this action became barred by virtue of the Oakley settlement is resolved in the statute. Section 1–39–115, W.S.1977 (1985 Cum.Supp.), provides that when a claim is received the Insurance Claims Division of the Department of Administration and Fiscal Control shall send the claim to the insurance company insuring the risk involved for investigation and adjustment. In this instance two referrals were made, and that action by the State effectively identified separate claims. We are satisfied that the legislature intended the same connotation of the word "claim" in § 1–39–116, W.S.1977 (1985 Cum.Supp.), as it intended for that word in § 1–39–115, W.S.1977 (1985 Cum.Supp.). The settlement of the claim against Oakley was not a settlement by reason of the same transaction or occurrence which was the subject matter of the original claim against Kinniburgh. Those two claims had been identified as separate and different by the State of Wyoming. Consequently the settlement of the claim against Oakley does not bar the assertion of the claim against Kinniburgh pursuant to § 1–39–116(b), W.S.1977 (1985 Cum.Supp.). The district court did not err in denying the Motion for Summary Judgment by the State of Wyoming.

Both Kinniburgh and the State of Wyoming complain of error in excluding additional witnesses whom the appellants wished to call and additional exhibits which they wished to offer on the ground that they had failed to comply with the pretrial order. The pretrial order provided in this regard:

"*WITNESSES.* All witnesses have been named. The parties will notify each other in writing not later than July 15, 1983 of any additional witnesses by name and address, along with a *detailed statement* of the testimony of each. That is not a summary, that is a *detailed statement.*

> "*EXHIBITS.* The parties have listed their exhibits. All exhibits will be marked before trial. Plaintiffs' with numbers in sequence and defendants' with appropriate letters in sequence. Each party will notify the other not later than July 15, 1983 of any other exhibits intended for use in the case and furnish copies of the same, or if not feasible, to make the same available for inspection. Unless written objection is filed and served not later than July 22, 1983, all exhibits which have been noticed will be admissible without further foundation." (Emphasis in original.)

The appellants claim that they complied with this requirement of the pretrial order by placing their notice of additional witnesses and exhibits in the mail addressed to the appellees on July 15, 1983.

When the district judge first advised the appellants of his intention to exclude the additional witnesses and exhibits, he stated that "notification for the Court is that you notify somebody by a date of a particular happening, not mailing. Mailing is not notification in this instance." At the trial the appellants made an offer of proof concerning the additional witnesses. The district judge then denied the offer of proof on three grounds: First, the offer itself was not in proper form; second, the appellants had failed to give notification to opposing counsel by July 15; and third, the appellants had failed to give a "detailed statement of the testimony as opposed to a summary."

The trial court in Wyoming has discretion in determining the requirements of adherence to pretrial and discovery orders. *Caterpillar Tractor Co. v. Donahue*, Wyo., 674 P.2d 1276 (1983); *Caldwell v. Yamaha Motor Co., Ltd.*, Wyo., 648 P.2d 519 (1982), quoting *Ford Motor Co. v. Kuhbacher*, Wyo., 518 P.2d 1255 (1974). Furthermore, it is our rule of jurisprudence that this court will uphold the action of the trial court if any reason appears in the record which supports the trial court's determination. *ABC Builders v. Phillips*, Wyo., 632 P.2d 925 (1981). In this instance the trial court was justified in determining that the required detailed statement of testimony of the witnesses was not provided. Even in briefs and arguments to this court the appellants have not specified the significance of the testimony of these additional witnesses by explaining clearly what the purpose and necessity of that testimony would have been in the case. We are justified in deeming the claim of error with respect to the additional exhibits waived because no offer of such exhibits was made at the trial. Consequently we cannot reach any conclusion with respect to prejudice.

In their next claim of error the appellants insist that the plaintiffs failed to establish by sufficient evidence that any action of Patrolman Kinniburgh was a proximate cause of the accident. Unless reasonable people could not disagree on the question, proximate cause is a question to be resolved by the trier of fact. *Buckley v. Bell*, Wyo., 703 P.2d 1089 (1985), and authorities therein cited. Since causation is a question of fact to be resolved by the trier of fact, this issue essentially challenges the sufficiency of the evidence to support the finding of the jury. In resolving that contention we must accept as true the evidence of the successful party, giving it every favorable inference which reasonably can be drawn, and we leave out of consideration contrary evidence by the unsuccessful party. E.g., *Pine Creek Canal No. 1 v. Stadler*, Wyo., 685 P.2d 13 (1984); *Anderson v. Bauer*, Wyo., 681 P.2d 1316 (1984); *Landmark, Inc. v. Stockmen's Bank & Trust Co.*, Wyo., 680 P.2d 471 (1984); *Grosskopf v. Grosskopf*, Wyo., 677 P.2d 814 (1984). Specifically this record reveals that when the first reported accident occurred the patch of ice was about one hundred to two hundred feet long just after 7 p.m. It was black ice and extremely slick, making the road "as slick as an ice skating rink." The evidence disclosed that other cars had also gone off the road. It was dark and the ice was in an area of limited visibility, which caused people to be surprised by it. Patrolman Kinniburgh was told when he investigated the first accident

that the road was slick and should be sanded. Usually the Maintenance Division of the Wyoming State Highway Department responds when the Highway Patrol requests that an area be sanded, and the Maintenance Division would take action if it were informed about such a hazard. The ice patch grew larger by 11 p.m., when the accident in this instance occurred. When the ambulance driver got out of his ambulance he fell down, there was difficulty in getting the gurney loaded into the ambulance, and difficulty in getting the ambulance underway. After that Officer Kinniburgh requested the sanding of the road. He did not have to go back to the area to investigate any other accidents that night. In the light of this information in the record, we have no difficulty in concluding that there was more than sufficient evidence to entitle the jury to conclude that Kinniburgh's conduct in not requesting that the road be sanded earlier was a substantial factor in bringing about the harm to these appellees.

The appellants' next complaint relates to their asserted error with respect to the failure of the trial court to give the jury an instruction on the duty of care owed by Clark's Ready Mix. Clark's Ready Mix had been named as a defendant, but a stipulation to dismiss the complaint as to it was made prior to the trial. In assessing comparative negligence, however, the negligence of Clark's Ready Mix had to be submitted to the jury. *Board of County Commissioners of Campbell County v. Ridenour,* Wyo., 623 P.2d 1174 (1981), reh. denied 627 P.2d 163 (1981). The instruction which the appellants offered with respect to the duty of Clark's Ready Mix reads as follows:

> "A landowner, such as Clark's Ready Mix and its principals, Lynn and Lewell Clark, which is in close proximity to a public highway, must exercise reasonable care to avoid injury to the traveling public arising from unnecessarily dangerous conditions created by the landowner on the land, where the consequences of a failure to do so are reasonably foreseeable. A violation of this duty constitutes negligence.
>
> "However, such a landowner is not considered negligent for allowing the natural accumulation of ice due to weather conditions where he has not created the condition. Further, when the danger arising from a natural accumulation of snow and ice is obvious or at least as well known to the driver of a vehicle as it is to the landowner, there exists no duty to remove the danger or warn plaintiff of its existence."

The principles applicable in this instance are first that an instruction which is not sustained by the evidence should not be given. *Hernandez v. Gilveli,* Wyo., 626 P.2d 74 (1981); *Beard v. Brown,* Wyo., 616 P.2d 726 (1980); *Gilliland v. Rhoads,* Wyo., 539 P.2d 1221 (1975). Furthermore, the court should refuse to give a tendered instruction which erroneously states the law. *Edwards v. Harris,* Wyo., 397 P.2d 87 (1964). See *Evans v. State,* Wyo., 655 P.2d 1214 (1982); *Nimmo v. State,* Wyo., 607 P.2d 344 (1980); *Simms v. State,* Wyo., 492 P.2d 516 (1972), cert. denied 409 U.S. 886, 93 S.Ct. 104, 34 L.Ed.2d 142 (1972).

We agree with the trial court that the record is not sufficient in this instance to justify a conclusion that there was any unnecessarily dangerous condition created by the landowner on the land in question. The evidence was simply to the effect that the water was coming out of the approach road to the premises of Clark's Ready Mix and onto the highway and its source may have been snow which had been plowed from Clark's access road. The creation of the condition, however, was not specifically described by the evidence. That portion of the instruction dealing with the duty of a landowner of premises adjacent to a public way apparently derives from *Timmons v. Reed,* Wyo., 569 P.2d 112, 123–124 (1977), in which we said:

> "The general rule applicable to the type of case now before us is stated in Restatement, Torts 2d, § 371, as follows: " 'A possessor of land is subject to liability for physical harm to others outside of

the land caused by an activity carried on by him thereon which he realizes or should realize will involve an *unreasonable risk* of physical harm to them under the same conditions as though the activity were carried on at a neutral place.'

"The defendant, therefore, is considered to have created only a risk as to injury, and with respect to the resulting damage his conduct cannot be called anything more than negligent. [Citation.] The landowner in close proximity to a public highway must exercise reasonable care to avoid injury to the traveling public arising from *unnecessarily dangerous conditions* created by him on the land, where the consequences of a failure to do so are reasonably foreseeable. [Citations.] A violation of this duty constitutes negligence." (Emphasis added.)

That portion dealing with the obvious danger rule is derived from *Sherman v. Platte County,* Wyo., 642 P.2d 787, 789 (1982). The instruction which was in issue in that case read:

"An owner or occupant of land or premises does not have an obligation to protect his invitees against dangers that are known to them or that are so obvious and apparent that they may reasonably be expected to discover such dangers."

In *Cervelli v. Graves,* Wyo., 661 P.2d 1032, 1039 (1983), we pointed out that this instruction applies only in suits against owners of the premises and pertains to those persons who come upon the land and subsequently sue for injuries sustained because of an accumulation of ice or snow on the premises.

We hold that in these circumstances the instruction complained of did not present a statement of the law which was correct in all respects, but instead was incorrect in part, and that further part of the proposed instruction was not supported by the evidence. The district court correctly refused to give the proposed instruction.

Finally, we address the matter of costs. Specifically the appellants object to the award of costs in the following categories:

1. They complain that the bill of costs included costs for service of the summons and complaint on Jack Oakley, Lewell and Lynn Clark, and Clark's Ready Mix, defendants with whom the plaintiffs settled. The total amount of those costs is $5.55.

2. The appellants complain of costs awarded for service of subpoenas on witnesses who were not called to testify by the appellees. Those witnesses were Charles Gaudet, Chris Brackin, Jack Oakley, Bob Zimmer, Dr. Dennis Lyman, Nanette Olsen, and Debbie Conover. The total amount of the costs awarded for service of these subpoenas was $12.00.

3. The appellants complain that costs were awarded for witness fees and mileage paid for witnesses who were not called to testify by the plaintiffs. These witnesses were Charles Gaudet, Chris Brackin, Jack Oakley, Bob Zimmer, Nanette Olsen, and Debbie Conover. The total amount of costs in issue under this item is $223.86.

4. The appellants complain that costs were awarded for witnesses for days when the witnesses did not appear at the trial. We cannot discern the amount in issue here because the position of the appellants simply is that fees were paid for more days than the witnesses actually appeared, but the one specific example simply points out that the witness testified on two days but was paid a witness fee for five days. No further specific information is given.

5. The appellants complain that expert witness fees of more than $25 per day were allowed without a showing of special circumstances for the actual payment of such fees. The amounts complained of were assessed as costs for the testimony of five physicians who testified at the trial. These amounts are significant, totaling $2,145.64.

6. The appellants complain of the award of costs for a pretrial conference with a doctor in the amount of $60.

7. The appellants complain of the award of costs for discovery depositions. These amounts total $1907.75.

8. Finally the appellants complain of the award of costs for a transcript of Kin-

niburgh's testimony at trial in the amount of $260.00.

The award of costs to the prevailing party is authorized pursuant to Rule 54(d), W.R.C.P., and § 1-14-124, W.S. 1977. This court previously has said that the proper costs to be assessed against the party who lost the case are not very clearly established in either the statute or the rule. *Roberts Construction Company v. Vondriska*, Wyo., 547 P.2d 1171 (1976). The appellants have not offered any material assistance in terms of dealing with these issues in their brief. In *Hecht v. Harrison*, 5 Wyo. 279, 290, 40 P. 306 (1895), the court noted that "not only must there be harm in the error, but it must be so important as to merit the consideration of the appellate tribunal, and to take something more than nominal value from the complaining party." With respect to the specific contentions of the appellants, we hold that costs should not be awarded for service fees upon parties with whom the successful party has settled. In the absence of a showing that it was not reasonable to obtain the attendance of witnesses who ultimately were not called by the prevailing party, which the appellants have not presented in this instance, we hold that it was permissible for the district court to award costs for the service of those subpoenas. According to the provisions of § 1-14-102, witnesses are entitled to receive fees for attending before a court, and therefore even if the witness does not testify, the cost is incurred. If it was reasonable for the witness to be subpoenaed then the award of costs for attending before the court is appropriate, and we have not been directed to anything in the record which would demonstrate an abuse of discretion on the part of the district judge in awarding the costs of witness fees and mileage for witnesses who were not called. If a witness did not attend before the court then a witness fee would not be payable for that day. This record, however, does not disclose when witnesses attended, but only the days on which they testified. Consequently there was no abuse of discretion on the part of the district judge in awarding witness fees for those days on which the witnesses attended, even if they did not testify on that day. The appellants have not shown by the record that any of the witnesses for whom the fees of which they complain were paid did not attend the requisite number of days. We shall address separately the question of the expert witness fees generally, but it does appear that, with respect to the payment of a fee for an expert witness, § 1-14-102(b), W.S.1977, requires that the expert give testimony which is admitted as evidence in the case. Therefore, the costs awarded for the physician who did not testify are not proper costs under the statute. We conclude that there was an abuse of discretion by the district court in awarding the $60 in question.

With respect to costs of discovery depositions, we espouse the rule that if the discovery deposition is reasonably necessary for the preparation of the case, then there is no abuse of discretion on the part of the district judge in awarding such costs. See for example, *Bailey v. Meister Brau, Inc.*, 535 F.2d 982 (7th Cir. 1976); *Griffin v. Collins*, 443 F.Supp. 1010 (S.D.Ga.1978); *George R. Hall, Inc., v. Superior Trucking Co., Inc.*, 532 F.Supp. 985 (N.D.Ga.1982); *Kraeger v. University of Pittsburgh*, 535 F.Supp. 233 (W.D.Pa.1982); *Wade v. Mississippi Cooperative Extension Service*, 64 F.R.D. 102 (N.D.Miss. 1974); *Mastrapas v. New York Life Insurance Co.*, 93 F.R.D. 401 (E.D.Mich.1982). With respect to the exercise of discretion as to such costs, however, the burden must be upon the party seeking the award of costs to justify to the district court that those costs were reasonably necessary for the preparation of the case for trial. If the depositions are introduced at the trial, or are used for purposes of impeachment or refreshing the recollection of a witness at the trial that would ordinarily satisfy the burden of demonstrating that they were reasonably necessary. Other uses of the deposition in connection with the trial proceedings such as motions for summary judgment might serve to persuade the district court that the depositions were rea-

sonably necessary, but it would not be required to so conclude. In this instance, however, the record does not demonstrate that any of these events occurred, and the appellees made no other showing with respect to establishing that the taking of the depositions was reasonably necessary for the preparation of the case for trial. Even though many of the depositions were noticed by the appellants, the expense of a transcript also must be justified because often parties can rely upon the filed transcript in terms of preparing for trial. Because the appellees did not establish on the record that the claimed costs for depositions or transcripts were reasonably necessary to prepare the case for trial, we cannot sustain the exercise of the district court's discretion in awarding such costs, and they must be deleted from the judgment for costs in favor of the appellees.

Substantially the same rule is applicable with respect to the award of costs for those witnesses who were subpoenaed to attend but did not testify. We note in this instance, however, that of those witnesses of whom complaint is made one of those witnesses was called by the appellants to testify. Three of them were not permitted to testify because notice of their testimony had not been given in a timely manner, but that ruling was not made by the district court until they already had appeared for trial. Finally, the conclusion not to call three of the other witnesses was reached after they had appeared and quite possibly because the trial court had indicated after the first day of trial that in its judgment negligence already had been established. Because of the familiarity of the trial judge with the dynamics of the trial, we sustain his exercise of discretion in awarding these costs.

The appellant Kinniburgh was called as an adverse witness by the appellees early in the trial. The appellees then obtained a transcript of his testimony for use during the trial. We are not advised by the record or the appellants' brief as to the basis for any conclusion that this expenditure was not necessary and proper. In the brief it is argued that it was only for the convenience and advantage of plaintiffs at trial, which may not be a bad description of expenditures that are necessary and proper, and the appellants further contend that there is no authority for awarding the costs of such transcript. The trial judge obviously is in the best position to draw a conclusion as to whether this expenditure was necessary and proper. Because the appellants have failed to make any showing of an abuse of the district court's discretion in that regard, we hold that this was a proper item of costs.

We turn to the matter of the expert witness fees with respect to which the appellants rely upon *Buttrey Food Stores Division v. Coulson,* Wyo., 620 P.2d 549, 20 A.L.R.4th 419 (1980). In that case we said that we did not know the amount awarded for the expert witness fee, and since there was no evidence as to the reasonableness of the unknown fee the trial court committed an abuse of discretion in awarding any amount in excess of $25. Two justices dissented because they were willing to conclude that the amount was not inappropriate for an expert witness fee for an orthopedic surgeon. In this instance the dollar amounts of the witness fees were specified, and since the record does not disclose that any complaint was made to the district court with respect to the excessive amount of those fees, the district court did not abuse its discretion in awarding these as costs. Apparently the appellants objected to the award of costs, and there is an indication that a letter was written with respect to them. That letter, however, is not a part of this record, and we do not know what the objection was that was called to the attention of the district court. It is the burden of the appellant to produce a record upon which we can decide the issues he presents. *Sharp v. Sharp,* Wyo., 671 P.2d 317 (1983), and authorities cited therein; *Scherling v. Kilgore,* Wyo., 599 P.2d 1352 (1979); *Mentock v. Mentock,* Wyo., 638 P.2d 156 (1981). On the limited record present we distinguish

*Buttrey Food Stores Division v. Coulson,* supra.

We have found it difficult to arrive at any definitive rulings with respect to the costs in this case because our record is inadequate. We point out, however, that it is the obligation of counsel for all parties to furnish information to a trial court upon which it can make an informed exercise of its discretion. Failure to perform that obligation in the future well may lead to disallowance of costs that are claimed or to the allowance of costs that are resisted simply on the ground that counsel have not performed their duty to the district court.

The judgment of the district court in this instance is modified by reducing the bill of costs by $1,973.30, which will reduce the judgments of the several appellees by $657.77 each. As modified, the judgments are affirmed.

ROSE, Justice, specially concurring.

The majority opinion does not address the effect on this appeal of the defendants' failure to fully assert their rights under the comparative-negligence statute, § 1–1–109, W.S.1977, and the contribution-among-joint-tortfeasors statutes, §§ 1–1–110 through 1–1–113, W.S.1977, even though Justice Rooney, in his dissenting opinion, treats these omissions as plain errors requiring reversal. While I cannot adopt the dissenting position that a possible misapplication of the comparative-negligence law amounted to plain error, I agree that the judgment in this case should be modified further to reflect the amount of consideration paid to appellees in the settlement of their claims against Jack Oakley and the State of Wyoming.

*Comparative Negligence*

Wyoming's comparative-negligence statute, § 1–1–109, W.S.1977, provides in part:

> "(a) Contributory negligence shall not bar a recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if the contributory negligence was not as great as the negligence of the person against whom recovery is sought. Any damages allowed shall be diminished in proportion to the amount of negligence attributed to the person recovering.
>
> "(b) The court may, and when requested by any party shall:
>
> "(i) If a jury trial, direct the jury to find separate special verdicts; * * *"

When the plaintiff's negligence is at issue in a case, the jury, in arriving at its verdict, must ascertain the percentages of fault of all of the participants to an occurrence, including non-parties who settled with the plaintiff. *Kirby Building Systems v. Mineral Explorations Company,* Wyo., 704 P.2d 1266 (1985); *Board of County Commissioners of County of Campbell v. Ridenour,* Wyo., 623 P.2d 1174, reh. denied 627 P.2d 163 (1981). These determinations by the jury permit an accurate comparison of the plaintiff's contributory negligence, if any, with the negligence of each of the defendants in the action:

> "* * * Logic dictates that, if the negligence of an actor who is not a party is not included in the comparative-negligence calculation, the percentage of negligence of defendants who are parties may be inflated, and this would have a detrimental impact upon the comparison of the fault of the plaintiff and the several defendants in reaching a determination as to liability of some or all of the defendants to the plaintiff." *Kirby Building Systems v. Mineral Explorations Company,* supra, 704 P.2d at 1272–3.

In the case at bar, the defendants, G.M. Kinniburgh and the State of Wyoming, did not request the trial court to place the settlor Jack Oakley on the verdict form for the jury's consideration. Nor have the defendants raised the issue of a defective verdict form on appeal. It is reasonable to conclude, therefore, that the defendants did not consider Oakley to be a participant to whom the jury properly could assign a proportionate share of the total causal negligence.

For purposes of discussion, however, I will assume that Oakley was an actor who should have appeared on the verdict form to permit an accurate determination of the parties' relative degrees of negligence. The question, therefore, becomes whether the failure of the court to instruct the jury to ascertain the negligence of participant Oakley amounts to plain, reversible error.

The Wisconsin Supreme Court resolved a similar question in *Patterson v. Edgerton Sand & Gravel Co.*, 227 Wis., 277 N.W. 636 (1938).[1] The court held that the defendants had waived their right to have the jury determine the negligence of a nonparty, since no request was made of the trial court:

> "Defendants also contend that the issue as to comparative negligence was not properly submitted because the jury was not directed by either the form of the questions or the court's instructions to include negligence on the part of [nonparty] Finley with that of [defendant] Wescott and the plaintiff in finding the proportion of the total causal negligence attributable to each of them, as is required under *Walker v. Kroger Grocery & Baking Co.*, 214 Wis. 519, 252 N.W. 721, 92 A.L.R. 680 [1934]. However, the record herein discloses that the defendants are not entitled to a reversal on that ground for the following reasons: They did not request the submittal of any question to the jury, or the giving of any instruction in respect to the inclusion of negligence on Finley's part in the total negligence which the jury was to take into consideration in finding the proportions of causal negligence attributable to Wescott and to the plaintiff, respectively. In the absence of any such request and any finding by the jury on that subject, there is applicable the rule that, 'When some controverted matter of fact not brought to the attention of the trial court but essential to sustain the judgment is omitted from the verdict, such matter of fact shall be deemed determined by the court in conformity with its judgment and the failure to request a finding by the jury on such matter shall be deemed a waiver of jury trial pro tanto.' [Citations.]" 277 N.W. at 640.

We have applied similar reasoning to conclude that a defendant must timely exercise his right to file a third-party complaint or the right is waived. *Pickett v. Associates Discount Corporation of Wyoming*, Wyo., 435 P.2d 445 (1967). I see no reason to apply a different rule when the defendant, for whatever reasons, fails to include all of the participants to an occurrence on the verdict form. The defendant bears the responsibility for structuring his own defense, and his failure to avail himself of a possibly advantageous procedure or defense theory does not constitute grounds for reversal.

### *Contribution Among Joint Tortfeasors— The Effect of a Release or Covenant Not to Sue*

Section 1-1-113, W.S.1977, of the contribution-among-joint-tortfeasors statutes concerns the effect of a release or covenant not to sue given in good faith to one of multiple tortfeasors:

> "(a) When a release or a covenant not to sue or not to enforce judgment is given in good faith to one (1) of two (2) or more persons liable in tort for the same injury or the same wrongful death:
>
> "(i) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

1. Wyoming's comparative-negligence statute derives from the Wisconsin statute. *Woodward v. Haney*, Wyo., 564 P.2d 844 (1977). We have previously concluded that the legislature intended to adopt the Wisconsin judicial construction of the act as of 1973, the date of enactment in this state. *Board of County Commissioners of County of Campbell v. Ridenour*, supra; *Woodward v. Haney*, supra.

"(ii) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."

We analyzed the contribution-among-joint-tortfeasors statutes in *Bjork v. Chrysler Corporation,* Wyo., 702 P.2d 146 (1985), and said that the statutes and the release document must be considered together as constituting the entire agreement of the parties. We said that, under § 1-1-113, a release no longer extinguishes the plaintiff's claim against the remaining tortfeasors, as was the case at common law. Instead, the release *reduces the claim* against the other tortfeasors to the extent provided by the terms of the release or the amount of consideration received, whichever is the greater. 702 P.2d at 151.

Appellees in the case at bar executed a release in favor of Oakley and the State of Wyoming. This release is contained in the record and provides in part:

"* * * It is understood by the undersigned that this Release reduces their claim against any other tortfeasor by the $22,500.00 consideration paid * * *"

Under the terms of the release agreement and the provisions of § 1-1-113, appellees settled their cause of action to the extent of $22,500 and retained the right, subject to other settlement agreements, to enforce the remainder of their claim against the other tortfeasors. The jury, following trial, determined the appellees' total damages resulting from the tortious incident. The court, in entering judgment on the verdict, deducted the amount received by appellees under their settlement agreement with driver Peggy Jo Parker, but did not deduct the amount of consideration received from Oakley and the State of Wyoming. The question arises as to whether this court, in the absence of any request from appellants, should direct modification of the judgment to reflect the amount received in settlement from Oakley and the State of Wyoming.

The Ninth Circuit Court of Appeals faced a related issue in *Layne v. United States,* 460 F.2d 409 (9th Cir.1972). That court was asked to interpret Alaska's settlement statute which tracks § 1-1-113 in all aspects pertinent here and, like our enactment, derives from § 4 of the Uniform Contribution Among Tortfeasors Act. The court held that the failure of the defendant United States to formally raise the issue of the settlement agreement at trial did not deprive it of the right to a reduction in the damages award by the amount paid for the release:

"[Plaintiff] Layne admits the applicability of the [Alaska Uniform Contribution Among Tortfeasors] Act, but claims that the United States cannot rely on Section 09.16.040 [pertaining to releases and covenants not to sue] because it failed to raise the issue during the trial by placing the settlement in evidence and showing that the released defendant Wickersham, was in fact a joint tortfeasor. That Wickersham was not 'one of two or more persons liable in tort for the same injury,' Layne contends, is demonstrated by the court's specific finding that the accident and Layne's resulting injuries 'were caused solely by, and were the direct and proximate result of, the negligence of the ... United States of America.'

"Layne misapprehends the purpose and effect of § 4 of the Uniform Act. While § 4 changed the common law in one respect (i.e., by providing that release of one joint tortfeasor does not automatically release the other joint tortfeasors), *it retained that part of the common law rule embodying the sound public policy of permitting a plaintiff to receive only the amount of his adjudged damages and no more,* regardless of the source of the recovery. Since the principle is that there can be but one satisfaction for the same injury, whether or not the released party is in fact jointly liable with the defendant against whom a judgment is rendered is not relevant. In either case, *to prevent recovery by plaintiff of more than his legitimate damages, 'the amount paid for the release or covenant not to sue must reduce pro tanto the injured person's judgment against another.* Prosser, Law of Torts, 2nd Ed., Sec. 46, p. 246; 109 Pa.L.R. 311, 313;

*Holland v. Southern Public Utilities Co.,* 208 N.C. 289, 180 S.E. 592, [1935] and cases cited; *Jacobsen v. Woerner,* supra, 149 Kan. 598, 89 P.2d 24, [1939] and cases cited.' *Steger v. Egyud,* 1959, 219 Md. 331, 149 A.2d 762, 767–768. [1959] (applying New Jersey law).

* * * * * *

"The settlement between Layne and Wickersham was part of the record before the trial court in this case. The trial judge discussed the settlement with attorneys for all parties at length, in open court. In such circumstances it would have served no useful purpose for the United States to formally offer the settlement into evidence and we do not require that it be done. Layne's award of damages against the United States should therefore be adjusted downward by $50,000 * * *." (Emphasis added.) 460 F.2d at 411.

Courts in other jurisdictions have applied similar reasoning in directing the reduction of a damages award to prevent "unjust enrichment" to the plaintiff, *Clark v. Brooks,* Del.Super., 377 A.2d 365, 369 (1977), or to bar the plaintiff from obtaining double recovery. *Daugherty v. Hershberger,* 386 Pa. 367, 126 A.2d 730 (1956).

Appellees in the case at bar received $22,500 pursuant to their settlement agreement with Oakley and the State of Wyoming. Under § 1–1–113, they retained the right to bring suit against the nonsettling tortfeasors for additional compensation of their injuries. Appellees do not possess a right to recover an amount in excess of their damages as determined by the jury. Therefore, in addition to the modifications approved by the majority, I would have reduced the judgment by the amount of the consideration received by appellees in settlement of their claims against Oakley and the State of Wyoming.

BROWN, Justice, specially concurring.

The dissent brings to our attention the fact that Jack Oakley, a named defendant in the complaint, "was not included on that portion of the verdict form which allocated the percentage of negligence." What is said in the dissent appears to be on the assumption that the record discloses evidence of Mr. Oakley's negligence.

In their complaint appellees alleged that "The negligence of the Defendant Oakley, while acting within the scope of his duties as an employee of the Wyoming State Highway Department, directly and proximately caused the injuries of the plaintiffs." They also allege several specific negligent circumstances implicating Mr. Oakley. An examination of the record, however, reveals that there was no evidence that Mr. Oakley was negligent.[1] Interestingly, Mr. Oakley was not even on duty the day of the accident, although after the accident he was called to put sand on the road.

Before a person can properly be placed on the form of verdict allocating percentage of negligence there must be some evidence of his negligence. *ABC Builders, Inc. v. Phillips,* Wyo., 632 P.2d 925 (1981). See also, *Klemme v. Hoag Memorial Hospital Presbyterian,* 103 Cal.App.3d 640, 163 Cal.Rptr. 109 (1980).

In the absence of a showing to the contrary, an appellate court will presume that the proceedings in the lower court were correct. 5 C.J.S. Appeal and Error, § 1533, p. 1025 (1958). The record in this case does not indicate whether or not the court and counsel considered including the name of Jack Oakley on the verdict form. We must assume that the court and counsel were aware of the cases cited in the dissent and that Jack Oakley was not on the verdict form because there was no evidence of his negligence. In the absence of a showing to the contrary we cannot assume that Jack Oakley was left off the verdict form because the court and counsel knew not the law or because of inadvertence.

An allegation of negligence in the complaint standing alone is insufficient. Fur-

1. Counsel do not contend that Mr. Oakley was negligent, and whether or not his name should have been on the verdict was not an issue at trial nor on appeal.

thermore, I do not believe that it is of any consequence that Jack Oakley made what appears to be a nuisance settlement with appellees before trial.

I agree that this case should be affirmed.

ROONEY,* Justice, dissenting.

The verdict form and the verdict in this case were fatally defective. Although settlement was reached with defendant Jack Oakley and the State with reference to liability based on Oakley's negligence, and although a release and covenant not to sue was given with reference thereto, he was not included on that portion of the verdict form which allocated the percentage of negligence.

The verdict read:

"1. Considering all of the fault that produced the injury to the plaintiffs at 100%, what percentage of the total fault do you attribute to each of the following:

| | | |
|---|---|---|
| "Glen Kinniburgh and The State of Wyoming (0% to 100%) | | "55 % |
| "Peggy Jo Parker | (0% to 100%) | 5 % |
| "Dave Thorson and Teton County Sheriff's Office | "(0% to 100%) | 40 % |
| "Clark's Ready Mix & Construction | "(0% to 100%) | 0 % |
| "Susan Dieringer | (0% to 100%) | 0 % |
| "Bonnie Roberts | (0% to 100%) | 0 % |
| "Connie Mark | (0% to 100%) | 0 % |
| | "TOTAL | 100 %" |

If Oakley and the State had been included on the verdict form, the percentage of negligence attributed to them may have considerably reduced that attributed to appellants, with a resulting decrease in the amount of the judgment.

We have recently emphasized the requirement that all participants' fault must be ascertained, including that of nonparty actors, and even those with whom settlement has been made. *Kirby Building Systems v. Centric Corporation,* Wyo., 704 P.2d 1266 (1985).[1] I need not elaborate on the exhaustive discussion contained therein. It was error to not include Oakley and the State on the verdict form.

In this case, the verdict form itself was not specifically objected to and the issue was not presented to us. Normally, we would, thus, not consider the matter. Rule 51, W.R.C.P.; *Anderson v. Foothill Industrial Bank,* Wyo., 674 P.2d 232 (1984); *Caterpillar Tractor Company v. Donahue,* Wyo., 674 P.2d 1276 (1983); *Alleman v. Alleman,* 78 Wyo. 135, 319 P.2d 871 (1958); *Rollins v. Duncombe,* 24 Wyo. 341, 157 P. 896 (1916). However, under the circumstances of this case, I believe it is not only proper for us to consider the error, but it is our duty to do so in the interest of justice.

The basis for requiring the objection at the trial level is to allow the trial court to consider and rule on the issue. *Dennis v. Dennis,* Wyo., 675 P.2d 265 (1984). In this case, there are three reasons for not invoking the propositions that an objection must be made and the issue must be presented to us: One, the problem *was* before the trial court and, therefore, the reasons for the proposition do not exist; two, the error was with reference to a fundamental right, and we have said that the proposition is not applicable to jurisdiction or other fundamental rights; and three, the error was plain error, wherefore, a review of the error can be had without objection having been made to it.

The potential of fault on the part of Oakley and his status as an actor in this incident were definitely brought to the attention of the court. For example, the complaint named Oakley as a defendant and alleged that his negligence "directly and proximately caused the injuries of the Plaintiff." A separate answer containing denials and affirmative defenses with ref-

* This case was assigned to Justice Thomas on March 22, 1984. He circulated the proffered opinion on August 1, 1985. The dissenting opinion without the addendum was circulated on August 7, 1985. Justice Brown circulated his specially concurring opinion on September 5, 1985. Justice Rose circulated his specially concurring opinion on September 6, 1985. The addendum to this dissenting opinion was circulated on September 9, 1985.

1. My dissent in Kirby was with reference to another issue.

erence to Oakley's liability was filed by Oakley and the State. Attached to the motion by appellees to dismiss their claims against Oakley and the State was a release and covenant not to sue Oakley and the State for any fault of Oakley, which release read in part:

> "* * * It is understood by the undersigned that this Release reduces their claim against any other tortfeasor by the $22,500.00 consideration paid * * *."

And the motion was granted. Appellants filed a motion for summary judgment on the grounds that the release of Oakley and the State also released appellants. Appellees also released Peggy Jo Parker, driver of the vehicle in which they were riding, from claims arising out of the incident, and she was on the verdict form with the jury allocating five percent fault to her. Also on the verdict form were Clark's Ready Mix & Construction and Dave Thorson and Teton County Sheriff's Office, all of whom (Parker, Clark's Ready Mix, Thorson and the Teton County Sheriff's Office) were referred to in the instructions as nonparties.

Additionally, this error is indirectly included in the first issue presented to us by appellants. A contention that the release of Oakley and the State operated to release appellant Dieringer and the State will naturally cause attention to be drawn to the verdict to determine the degree of fault attributed to the two of them and the amount received by appellants in settlement for fault of Oakley, which amount should be deducted from the jury award. In this case, the verdict form did not consider the fault of Oakley, and the amount received in settlement from him was not deducted from the award in the judgment. The judgment did deduct the amounts received in settlement with Parker.

The improper conditions of the verdict form and the verdict were before the trial court, and they were sufficiently presented to us under the circumstances of this case. Reversal should result.

Added to the foregoing is the fact that the error concerned the fundamental right of appellants to be responsible, under the comparative-negligence statute, only for their own degree of fault. We have said that we have the "right and duty * * * to decide the cause on a point not raised below where such matter is fundamental." *Steffens v. Smith,* Wyo., 477 P.2d 119, 121 (1970). If only five percent of the fault, attributable to appellants, were charged to Oakley, there would be no recovery against appellants.

In any event, we should consider the error as plain error. Rule 7.05, W.R.A.P., provides:

> "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
>
> "* * * [W]e [the supreme court] are duty bound to consider an unassigned error under the plain error doctrine as well as our general supervisory powers, where the error is blatant and results in an unmistakable and unconscionable miscarriage of justice. * * *" *Sanchez v. State,* Wyo., 592 P.2d 1130, 1131 (1979).

There is a duty to invoke the plain error doctrine when the error seriously affects the fairness or integrity of the judicial proceedings. *Hopkinson v. State,* Wyo., 632 P.2d 79 (1981), cert. denied 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982); *Jones v. State,* Wyo., 580 P.2d 1150 (1978).

This error is similar to an error caused by failing to join an indispensable party—the failure to join was in the verdict form. Reasoning should be the same in ascertaining the result of the party's absence.

We have held that the lack of an indispensable party is of such importance that the supreme court may properly raise the question on its own motion. *State by and Through Christopulos v. Husky Oil Company of Delaware,* Wyo., 575 P.2d 262 (1978). We there quoted from 3A Moore's Federal Practice, 2d Ed., ¶ 19.05:

> "'But the concept of indispensability goes beyond federal jurisdiction and touches the very power or the right of the court to make an equitable adjudica-

tion, where an indispensable party is not before it. In this situation, barring exceptional equities, it should not proceed without his joinder, * * *.' " 575 P.2d at 269.

We have also held that failure to object to a defective judgment does not constitute a waiver of such defect. *Cates v. Barb,* Wyo., 650 P.2d 1159 (1982).

The three-part test to qualify an error as plain error was definitely met in this case: There is a clear record of that which occurred (the verdict form is before us), a clear and unequivocal rule of law exists (see *Kirby Building Systems v. Centric Corporation,* supra, and the Wyoming cases cited therein), and a substantial right was affected (appellants' degree of negligence could have been different). See *Hopkinson v. State,* Wyo., 664 P.2d 43 (1983); *Mason v. State,* Wyo., 631 P.2d 1051 (1981).

My position, supra, would make more equitable the majority's decision to limit the release of Oakley, as it applied to the State, only to employee Oakley's fault and not to employee Kinniburgh's fault. However, I need not address the problem of there being a single injury with the resulting liability to be measured from that standpoint. A correct verdict form recognizes this fact.

### ADDENDUM

Justice Brown and Justice Rose each have circulated a specially concurring opinion in response to this dissent.

In his opinion, Justice Brown would make it unnecessary to place a defendant on a verdict form in a negligence case if there was no evidence introduced as to his negligence [2]—this to be done absent his removal from the case by virtue of a summary judgment in his favor (as occurred in *ABC Builders, Inc. v. Phillips,* Wyo., 632 P.2d 925 (1981)—the case cited by Justice Brown to support his contention) and ab-

sent the granting of any other motion removing him from the case.

Such a precedent will really confuse the orderly procedure relative to the proper presence of a party in a lawsuit and relative to the factual determination of negligence by the jury.

I not only disagree as to the premise for Justice Brown's argument, but I disagree with the conclusion even if the premise were correct.

Justice Rose's opinion is also flawed. He finds some kind of waiver on the part of the defendant in not insisting that all participants be included on the verdict form. Justice Rose thus finds a waiver of plain error. Plain error is inconsistent with waiver. Justice Rose's argument, if valid, would apply to all of those cases decided by this court in the past on the basis of the presence of plain error. I have set out above the factors which we have said must be present for plain error, and I have designated wherein they are all present in this case.

Additionally, the argument presented by Justice Rose to justify the failure to include participants Oakley and the State on the verdict form is inconsistent with his argument that the settlement amount received from Oakley and the State should be acknowledged and the judgment be reduced accordingly. Either there was a waiver by the parties for all involvement of Oakley and the State through an acceptance of the verdict form or there was not.

The facts and errors in this case are plain; there should not be any effort of rationalizing or justifying them.

I would reverse and remand for a new trial.

---

2. The evidence relative to Oakley's duty to attend to the spreading of gravel on highways and to his failure to perform such duty was part of plaintiff's case against Oakley and the State. A
settlement was made with Oakley for $22,500, and he was given a release. It is difficult to understand how he can be considered a nonparticipant.